Edwin Ray HAYNES, Plaintiff-Respondent,

v.

Clifford Eugene LINDER, Defendant,

and

Hawkeye-Security Insurance Company,
Garnishee-Appellant.

Jon HAYNES, Plaintiff-Respondent,

v.

Clifford Eugene LINDER, Defendant,

and

Hawkeye-Security Insurance Company,
Garnishee-Appellant.

Nos. 22894, 22895.

Kansas City Court of Appeals.

Missouri.

April 6, 1959.

506

Paul C. Sprinkle, Sprinkle, Carter, Sprinkle & Larson, Kansas City, for appellant.

Laurence R. Smith, Swofford, Schroeder & Shankland, Kansas City, Anderson, Anderson & Milholland, Harrisonville, for respondents.

HUNTER, Judge.

This is an appeal from two separate judgments. The two cases involved were consolidated for trial, and, the separate appeals from the separate judgments were consolidated by order of this court. The judgments appealed from were in the sums of $5,513.35 and $5,373.65, respectively. Since each judgment is for less than $7,500 and no other factor is involved that could place jurisdiction in the Supreme Court

this court has jurisdiction of the appeal. Const. Art. V, § 3, 2 V.A.M.S.

The consolidated cases were tried before a jury. The evidence was uncontroverted. We proceed to set out the substance of all of it that is pertinent on this appeal.

Robert A. Bacus was an employee of Gerald R. Gardner. Bacus wished to purchase an automobile from the Tigerman Motor Co. On May 27, 1955, Tigerman Motor Company sold Bacus a 1951 DeSoto automobile. The title certificate was assigned to Bacus and he was issued the usual Missouri Certificate of Title as the duly registered owner of the car.

Bacus signed a note payable to his seller, Tigerman Motor Company, for $714.30 and also signed and gave a mortgage on the car to that company in that amount. As an accommodation to Bacus, Gerald Gardner co-signed the mentioned note. The note specified monthly payments.

Following his purchase of the automobile Bacus bought an insurance policy from the garnishee-appellant, Hawkeye-Security Insurance Company covering the DeSoto automobile. Bacus paid the premium for the period of June 6, 1955, to June 6, 1956. This policy was in full force and effect during all of the time with which we are concerned, and there is no claim of refund of premium or cancellation of policy involved. For about six months Bacus drove the car and kept up the payments on it. At that time because of lack of business he was "laid off" his job by Gardner and he fell behind in his car payments.

According to Bacus' testimony he then received a "dun" from Tigerman Motor Company. He discussed this with Gardner, and as a result of that conversation gave possession of the automobile and its keys to Gardner without any restrictions as to the use Gardner could make of it. Bacus had the previously mentioned certificate of title to the automobile but did not sign it over to Gardner nor give it to him. He

did give Gardner whatever other (undescribed) papers he had. He was willing for Gardner to take the car to "protect his mortgage" (note).

"Q. When you gave up possession of the car so far as you know you were giving it up for good for Mr. Gardner to do what he pleased with it; is that right? A. Yes."

Gardner testified that when Bacus was unable to make the payments on the car demand was made on him (Gardner) for them. The car was in such mechanical condition that it could not be driven. He took it from Bacus under the described circumstances and fixed it up. He did not get a new license for it nor did he transfer any insurance on the car. He kept the car about two weeks. Then

"Q. What did you do with the car after you obtained the possession? A. I sold it to an employee of mine by the name of Elmer Mosley, and he, too, couldn't make the payments, and then I sold it to Clif Linder."

Mosley had it only a week or two. Nothing in writing was involved. No papers were given or transferred to Mosley. Nor was there any change of license.

When Linder obtained the car from Gardner again there was no transfer of any certificate of title or license. Nor was anything in writing involved.

Gardner was asked, "After you let Mr. Linder drive the car, did you ever tell Mr. Bacus that Mr. Linder had the car? A. Oh, yes.

"Q. And did that meet with his approval? A. Yes, sir.

"Q. He had no objection to it? A. Just as long as the payments were being made."

Gardner stated he was interested in Linder keeping the car and making the payments because if Linder didn't make the payments Gardner or Bacus would have to.

Gardner also testified that he would have "sold" the car even if Bacus had told him not to. He did not ask Bacus whether he could sell the car either to Mosley or Linder. He said it was his idea that when the payments on the car were completed the Tigerman Motor Company would see that Linder got a proper title to the car.

Bacus testified that although he had known Linder for some time he had had no personal contact with Linder on the subject. He (Bacus) did learn from Gardner that Linder had the car and was driving it.

"Q. Did Mr. Gardner ask you if that was all right? A.' Yes, sir.

"Q. What did you say? A. I told him it was all right.

"Q. Was that before the accident? A. Yes."

On April 28, 1956, while driving the De-Soto automobile, Linder had a collision with another automobile occupied by the plaintiffs, Edwin Ray Haynes, and Jon Haynes. Plaintiffs obtained the mentioned judgments against Linder. Executions were run and returned non-est. Thereafter, garnishee-appellant, Hawkeye Security Insurance Company, was served with summons; interrogatories, answers and replies were filed; and the issues made up that are urged on this appeal.

■ Appellant's principal contention is that the trial court erred in failing to sustain its motions for a directed verdict at the close of plaintiffs' evidence and at the close of all the evidence, and its Motion for Judgment after verdict for the urged reason that under the evidence Linder was not an additional insured under the insurance policy issued to Bacus.

The pertinent provisions of the insurance policy are:

"III. Definition of Insured

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes *any person while using the automobile* and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or *with permission* of either * * *." (Italics ours.)

Appellant argues that since the car was not being operated at the time of the accident by the named insured (Bacus) it is necessary that the evidence disclose the automobile was being operated by defendant (Linder) with the permission of the named insured and that mere knowledge that the car was being operated by Linder was not permission by the named insured. Further, Bacus as the named insured had parted with possession of the car and relinquished any interest in it to Gardner; that Gardner would have "sold" the car without Bacus' consent, and "that Bacus could not prevent the resale of the car and, therefore, he did not permit the defendant to drive it."

■ We are faced with construing the so-called omnibus clause of this insurance contract. As in construing any contract it is our duty to ascertain and give effect to the intention of the parties. We should not so construe it as to give a meaning which either extends or restricts the coverage beyond that actually provided.

■ An omnibus clause, such as the one in question, gives the insured power to bring within the protection of the policy a third person using the insured automobile with the permission of the named insured. Such person becomes an additional insured by virtue of the clause as if he were named an insured in the policy. As stated in 45 C.J.S. Insurance § 829c, 2, (a), p. 894: "It does not merely afford additional protection to the owner of the car; it creates liability

insurance for the benefit of those who come within the clause and meet its requirements, even though they pay no premiums and contribute no benefit to the insurer for the protection and even though they have no insurable interest * * *."

In order that one's use and operation of the automobile be "with permission" within the meaning and effect of the omnibus clause, the relation of the assured to the automobile must be such that he is in a position to give consent. This is usually expressed by saying that the person purporting to give consent must have the capacity or power to give such consent. As a general rule this means the insured purporting to give consent must own the insured vehicle, or in any event have such an interest in it such as the right to possession and control of it as to be in a position to give permission. 5A Am.Jur., Automobile Insurance, § 95, page 94; 45 C.J.S. Insurance § 829c(2) bb, p. 900; Annotations, 72 A.L.R. 1390; 106 A.L.R. 1255; 126 A.L.R. 549.

In Allstate Insurance Co. v. Hartford Accident & Indemnity Co., 311 S.W.2d 41, 45, the Springfield Court of Appeals stated the rule thusly: "The word 'permission' as used in an omnibus clause has a flexible meaning depending upon the sense in which it is used. Under the definitions ordinarily given, it carries with it the necessary aspect of the right, power, or privilege to give or to withhold the grant of license embodied in the term. Thus one who has the right and power to use engages in such use by virtue of his own right and not by permission of another."

Thus, if a valid sale has occurred and possession of the automobile is delivered to the buyer, the subsequent use by the buyer is by virtue of the buyer's ownership of it and his right to control it and not by virtue of the grant to him of any permission by the seller, and does not constitute the use "by permission" of the insured seller within the meaning of the omnibus clause provision. See, Virginia

Auto Mutual Ins. Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377; Employers Liability Assur. Corp. v. Sweatt, 95 N.H. 31, 57 A. 2d 157; 7 Appleman, Insurance Law and Practice, § 4358.

It is established that the permission contemplated by the omnibus clause can be either express or implied from the conduct and statement of those in position to give it. McKee v. Travelers Ins. Co., Mo.App., 315 S.W.2d 852, 855; Varble v. Stanley, Mo.App., 306 S.W.2d 662, 666; Annotations, 5 A.L.R.2d 608; 160 A.L.R. 1202; 5A Am.Jur., Automobile Insurance, § 94, page 92; 72 A.L.R. 1397. It can, for example, be given by knowledge and acquiescence in such use. 45 C.J.S. Insurance § 829c(2) (b), pp. 897–898; 5A Am.Jur., Automobile Insurance, § 94, pages 92–93; Annotation, 5 A.L.R.2d 610; Cf. McKee v. Travelers Ins. Co., supra. However, the permission contemplated is something more than mere sufferance or tolerance without taking steps to prevent, and the term is used, rather, in the sense of leave, license or authority with the power to prevent. Varble v. Stanley, Mo.App., 306 S.W.2d 662, supra; 45 C.J.S. Insurance § 829c (2) (b), p. 897.

It is the general rule that one to whom the insured has given permission to use the automobile has no authority to delegate or grant such permission to another so as to make the latter an additional insured, but the insured's conduct, or the nature and scope of the permission granted by him may be such as to indicate permission to such other, or to authorize the first permittee in turn to permit such other to use the automobile so as to bring the second permittee within the coverage of the policy. See, Risjord-Austin, Automobile Liability Insurance Cases, Chapter 20, pages 127–28; 45 C.J.S. Insurance § 829c (2) bb, p. 901; Annotations, Automobile Insurance—"Omnibus" Clause, 72 A.L.R. 1401, 160 A.L.R. 1210, 5 A.L.R.2d 643; 5A Am.Jur., Automobile Insurance, Sec. 96, page 96 ff.; Odden v Union Indemnity Co.,

156 Wash. 10, 286 P. 59, 72 A.L.R. 1363; Harrison v. Carroll, 4 Cir., 139 F.2d 427; Indiana Lumbermen's Mutual Insurance Co. v. Janes, 5 Cir., 230 F.2d 500; United Services Auto Ass'n v. Preferred Accident Ins. Co. of New York, 10 Cir., 190 F.2d 404.

We turn from these established principles to the undisputed facts involved in the case before us. Bacus owned the automobile in question at the time the insurance policy was issued. He at all times retained the certificate of title in his name to the automobile and never assigned or delivered it to anyone else. It is provided by statute in this state that any purported sale of a motor vehicle which has been registered under the laws of this state without the assignment of the certificate of ownership is fraudulent and void. Sec. 301.210 RSMo 1949, V.A.M.S.; Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534; Allstate Ins. Co. v. Hartford Accident & Indemnity Co., Mo. App., 311 S.W.2d 41; Albright v. Uhlig, Mo.App., 315 S.W.2d 471; Fowler v. Golden, 240 Mo.App. 627, 212 S.W.2d 93; Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975; Bordman Investment Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72. Not only is the sale void but under the statute's terms both the seller and purchaser are guilty of the commission of a misdemeanor. The transaction passes no title or ownership in or to the automobile. The purported buyer acquires no right of possession and user against the purported seller, who may repudiate and tender back the consideration. Allstate Insurance Co. v. Hartford Accident & Indemnity Co., supra; Riss & Co. v. Wallace, 350 Mo. 1208, 171 S.W.2d 641, 151 A.L.R. 512.

Thus, Gardner did not receive ownership or title to the automobile when he took it from Bacus under the described circumstances. Ownership and title remained in Bacus. Although Gardner testified, as a layman, that he "sold" the automobile first to Mosley and then to Linder, the undisputed facts disclose no such sale resulted. Not having either ownership or title to the car Gardner had nothing to sell, and could not sell that which he did not have. Further, Gardner, not having a certificate of ownership to the automobile, did not deliver a certificate of ownership to either Mosley or Linder. As a result, neither Mosley or Linder ever received any ownership of or title to the automobile.

Not only did Bacus continue to be the owner of and have title to the automobile, but he continued to be liable on his note secured by his chattel mortgage for the unpaid balance of the purchase price of the automobile.

The instant situation is somewhat comparable to that described in Allstate Insurance Co. v. Hartford Accident & Indemnity Co., supra. There, Lynn-Moore, an automobile dealer "sold" Akins a Pontiac for $127 cash, his old car as a trade in, and his note for the balance, $283.92. Akins signed the note, and mortgage, and gave them together with his old car to the car dealer. He received possession of the Pontiac automobile. He was to get the certificate of title to it the next morning. However, later that same day he had an accident. The determinative question was whether he was driving the Pontiac with the permission of Lynn-Moore within the meaning of the insurance omnibus clause or by virtue of his own right. The court said, 311 S.W.2d loc. cit. 47: "If we view the transaction between Akins and Lynn-Moore as an attempt to make a completed sale, then the transaction was wholly and completely void, because the law so made it. If we regard it as an executory contract to complete a sale in the future * * * then the user of the car pending completion was by consent and permission of the seller. Lynn-Moore (seller) did not *have* to deliver the automobile to Akins. It was under no obligation to do so until the sale had been consummated in fact and in law by transfer of title. It did so in the exercise of a right and power which it had the right to give or to withhold. The delivery under the circumstances shown here carried with it, at the instant of the delivery, the implied

permission to use and operate the automobile." See also, Garlick v. McFarland, 159 Ohio St. 539, 113 N.E.2d 92. Traders & General Ins. Co. v. Pacific Employers Ins. Co., Cal.App., 276 P.2d 628; Pennsylvania Thresherman & Farmers' Mutual Cas. Ins. Co. v. Crapet, 5 Cir., 199 F.2d 850.

As in the Allstate case, under the undisputed facts it appears that Linder's possession of and right to drive the automobile was not because of any ownership, or title, or other right therein that he possessed but rather was by and with the consent of Bacus, who we hold had the power to consent and who having been advised that Linder was driving the car, acquiesced and agreed that Linder could continue to drive the car. Cf. Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363.

■ Appellant also argues that defendant Linder had no insurable interest in the car and therefore could not claim to be a beneficiary under the policy of insurance purchased by Bacus. This argument appears to be a tacit admission by appellant that Linder did not obtain ownership, title, or anything that could amount to an insurable interest as a result of the so-called "sale" to him of the automobile.

■ According to the decisions, a person who attempts to purchase an automobile but who never receives a certificate of ownership as required by Sec. 301.020 RSMo 1949, V.A.M.S., not only does not obtain title of ownership thereto but does not acquire an insurable interest therein. Personal Finance Co. of Missouri v. Lewis Investment Co., Mo.App., 138 S.W.2d 655, loc. cit. 656; Mathes v. Westchester Fire Ins. Co. of New York, Mo.App., 6 S.W.2d 66; Kelso v. Kelso, supra, 306 S.W.2d loc. cit. 538.

However, as indicated earlier it is not necessary that the driver of an automobile who is operating it with the permission of the owner-assured have an independent insurable interest in the automobile in order

for him to become an additional assured under the omnibus clause and to be indemnified therein against liability for injury to others. Ohio Farmers Ins. Co. v. Lantz, 7 Cir., 246 F.2d 182, 185; 45 C.J.S. Insurance § 829c (2) (a), p. 895; Allstate Insurance Co. v. Hartford Accident & Indemnity Co., supra.

■ Appellant also suggests (1) the rule preventing assignment of a liability insurance policy and (2) that part of the policy declaring its nonapplicability to "the liability assumed by the assured under any contract or agreement" prevent Linder from having coverage under the policy. The fallacy of these suggestions is apparent. Linder's coverage comes not by way of any assignment of the policy but as an additional assured *under the terms of the policy*. Nor have either Bacus or Linder assumed any liability under any contract or agreement as contemplated by this portion of the policy. Linder's liability is for the commission of a tort, and appellant's duty to indemnify is established under its policy terms. We deem these suggestions of appellant to be without merit.

It would serve no useful purpose to further discuss appellant's principal contention. The trial court did not err against appellant in ruling that a submissible jury case had been made by respondents and that appellant was not entitled either to a directed verdict or to have its motion for judgment after verdict sustained.

■ Appellant further contends the trial court erred in giving Instruction No. 1 on behalf of respondents because it contained no facts from which the jury could pass upon the issue presented, was misleading, granted the jury a roving commission and was in conflict with Instruction No. 4a given on behalf of appellant.

In its brief appellant takes the position that there is no factual dispute existing in the case. It says, "If there was any issue of fact for the jury, and the garnishee (appellant) denies that there was, the only is-

sue could have been as to whether or not under the facts there could be legal consent when Bacus did not have the choice to agree or refuse."

We agree with appellant that all of the essential facts are uncontroverted. The real question in the case, as appellant states, is the legal effect of those uncontroverted facts—i. e., whether or not they can and do show the permissive use of the car required by the omnibus clause of the insurance contract.

In Instruction No. 1, the verdict directing instruction, the jury was required to find, among other things, that at the time of the accident Clifford Linder was operating the 1951 DeSoto automobile with the permission of Robert A. Bacus. Instruction No. 2, also the subject of objections by appellant, read in part, "The court instructs the jury that in order for the jury to find under Instruction No. 1 that Clifford Linder was driving the DeSoto automobile at the time plaintiffs were injured with the permission of Robert A. Bacus * * * that if you find that said Bacus gave possession of said car to Jerry Gardner in the fall of 1955 with no restriction on the use of said automobile, and if you find that later in 1955 said Gardner gave possession of said car to said Linder with no restrictions on the use of said car, and if you find that after Linder was given the possession and use of said car by Gardner, if so, and prior to the time plaintiffs were injured, that Bacus learned from Gardner of Linder's possession and use of said automobile, if so, and that Bacus expressed his consent and approval thereto to said Gardner, and if you find that Linder's use of said automobile continued to April 28, 1956 (when plaintiffs were injured), without objection by either said Bacus or said Linder, if so, then you may find under Instruction 1, that said Clifford Linder was driving said car at the time plaintiffs were injured, with the permission of said Robert A. Bacus."

Instruction No. 1 required the jury to find permission in order to return a verdict for plaintiffs. Instruction No. 2 referred

to Instruction No. 1, and further clarified and defined permission and hypothecated additional facts which the jury was required to find in order to find the permission mentioned in Instruction No. 1. The two instructions may be read together. Duffy v. Rohan, Mo.Sup., 259 S.W.2d 839; McDaniel v. McDaniel, Mo.Sup., 305 S.W. 2d 461, 467–468.

Under the peculiar facts of this case, where appellant acknowledges there is no issue of fact for the jury, and certainly no controversy as to what occurred, Instruction No. 1 standing alone is a sufficient submission to the jury. See Herrman v. Daffin, Mo.App., 302 S.W.2d 313, 321. It is, if anything, clarified, and strengthened by Instruction No. 2. Appellant's suggestion that the instructions eliminate the question of "the inability of Bacus to refuse the right of Gardner to sell the car" is unsound in that under the undisputed testimony Gardner never received ownership in or title to the automobile, and Bacus who continued to own and had title to it, as a matter of law under the undisputed facts had capacity and power to give the requisite consent. We overrule appellant's contention as to Instructions Nos. 1 and 2 as being without merit.

As to Instruction No. 4a, which was given at appellant's request, upon our examination we agree it tends to conflict with Instructions Nos. 1 and 2. However, all such conflicts are because Instruction 4a improperly declares the law to be applied, and contains required findings outside the scope of the evidence adduced in the case. Any error resulting from giving it was prejudicial to respondents and not to appellant.

As its final contention appellant states the trial court erred in refusing to give Instructions Nos. 4 and 5. The trial court already had instructed the jury on what, at most, was the only fact question in the case. Having instructed once adequately on that "issue" there was no duty

on the court to give other instructions thereon.

Further, appellant's Instructions No. 4 and 5, as appellant states in its brief, was its version of a correct legal direction to the jury as to what constituted permission. For reasons already expressed herein, it is our view that they were not correct legal directions to the jury.

Thus, after examination of all of appellant's contentions and cited authorities, we have concluded that the trial court did not err against appellant.

The judgments of the trial court are affirmed. It is so ordered.

All concur.