Joseph SABELLA, Plaintiff-Appellant,

v.

AMERICAN INDEMNITY COMPANY, a Corporation, Defendant-Respondent.

No. 50199.

Supreme Court of Missouri,

En Banc.

Nov. 11, 1963.

Walter S. Berkman, St. Louis, for appellant.

Schwartz & Ely, Wilbur C. Schwartz, and Joseph Howlett, St. Louis, for defendant-respondent.

HYDE, Judge.

Equitable garnishment action under Sec. 379.200 for satisfaction of a $2500.00 judgment from an insurance policy issued by defendant to St. Ann Motors, Inc., (statutory references are to RSMo and V.A.M.S.). The judgment sought to be collected was rendered in favor of plaintiff against Larry

Huff, who drove a car he was buying from St. Ann Motors into a rear-end collision with a car driven by plaintiff. The trial court found for defendant and plaintiff appealed.

The St. Louis Court of Appeals affirmed the judgment but transferred the case here, in accordance with Sec. 10, Art. V, of the Constitution, V.A.M.S., because its ruling was "contrary to the law as announced by the Springfield Court of Appeals in the case of Allstate Insurance Company v. Hartford Accident & Indemnity Co., Mo.App., 311 S.W.2d 41, and Haynes v. Linder, Mo.App., 323 S.W.2d 505, decided by the Kansas City Court of Appeals."

It was stipulated that defendant had issued a garage liability policy which insured cars of St. Ann Motors, including as insured "any person while using an automobile covered by this policy * * * provided the actual use of the automobile is by the named insured or with his permission." The decisive question herein is whether Huff was an insured person, under this policy provision, when he ran the car (delivered to him on Wednesday, August 17, 1960) into the rear of plaintiff's car at 7:00 A.M. on Friday, August 19, 1960.

We adopt the following statement of facts from the Court of Appeals opinion, together with its conclusion about time of delivery of title certificate.

"On Wednesday, August 17, 1960, Larry Huff purchased a used 1957 Plymouth Savoy, 8-cylinder sedan, bearing motor number P 31 110115, from St. Ann Motors, Inc. In payment therefor he traded in and delivered to St. Ann Motors, Inc. on said date, a 1951 Oldsmobile for which he was allowed a credit of $145.00 on the purchase price. He also made a cash payment of $100.00 and, to secure the balance due, executed a chattel mortgage on the car in question. He signed the mortgage the day he bought the car.

"The chattel mortgage provided: 'Customer (which means all purchasers jointly and severally) has today purchased from seller, on a time basis, under the terms and provisions on the face and back hereof, accepted in its present condition and received delivery of the following motor vehicle (hereinafter called car).' The instrument then describes the Plymouth car, gives the name of the customer, (mortgagor), the name of the seller, (mortgagee), and sets out the terms of the transaction. The terms recited included a tradein allowance of $145.00 for Huff's 1951 Oldsmobile, and $100.00 in cash as down payment by Huff, leaving a time balance of $853.38 which Huff agreed to pay in 18 monthly installments of $47.41 each commencing October 19, 1960. There follows a provision that the 'insurance against liability for bodily injury or property damage is not included in this transaction.' On said date he delivered to St. Ann Motors, Inc. the certificate of ownership of the Oldsmobile. He took delivery of the Plymouth car on said date. However, no certificate of title to the Plymouth was given to him at the time for the reason that St. Ann Motors, Inc. did not then have possession of it. The certificate of title which St. Ann Motors, Inc. had acquired when it purchased the car on August 8, 1960, was then in Jefferson City at the Motor Vehicle Registration Department for the purpose of having a new title issued to St. Ann Motors, Inc. On the same day, August 17, 1960, a certificate of title in the name of St. Ann Motors, Inc. was issued by the department at Jefferson City. Larry Huff was told by the person who handled the deal for St. Ann Motors, Inc. that the title to the Plymouth would be mailed to him.

"The date of the delivery of the certificate of title to St. Ann Motors, Inc., and the date on which the latter forwarded same to Huff are in dispute. Plaintiff offered in evidence a letter from the Motor Vehicle Registration department at Jefferson City, dated October 18, 1961, addressed to plaintiff's attorney and signed by Glenn Goe, stating that the title in question was issued on August 17, 1960, but further stating, 'However, the title may not have been mailed from this office on that day, it could have been a day later.' The same Glenn Goe, in a letter subsequently written to defendant's counsel dated January 29, 1962, stated that the title was mailed at Jefferson City on August 17, 1960. Huff testified that he received the title through the mail about a week after he got the car. There was no direct evidence as to when it was received by St. Ann Motors, Inc. Circumstantial evidence is mainly relied upon by defendant as showing that the title was received by St. Ann Motors, Inc. on August 18, 1960 and mailed to Huff that same day. The car in question was financed through Universal C.I.T. Credit Corporation. On August 18, 1960 an employee of St. Ann Motors, Inc. caused to be issued a draft on Universal C.I.T. Credit Corporation. Mr. Gerber, President of St. Ann Motors, Inc., testified that normally the company has possession of the title to the car being financed when such a draft is drawn. The chattel mortgage on the car accompanied the draft. On the same date an application for title was prepared for Huff to submit to the proper authorities to secure a title in his name. Huff received it in the mail with the title to the car. Mr. Fortner testified that to prepare this document it was necessary to have the title from which to secure the motor number and all the other information called for therein pertaining to the car.

"The assignment of the title to Larry Huff which appears on said title is signed 'St. Ann Motors, Inc. E. Littiken'. E. Littiken was a girl who had worked in the office of St. Ann Motors, Inc. She did not testify at the trial. Her whereabouts, at the time of the trial, were unknown to Mr. Gerber. Mr. Gerber testified that when a title for a customer is received, it is deposited in the mail, if the person for whom it is intended has not made arrangements to pick it up. He also stated that in most cases where titles are assigned, they were

signed by him or someone with his authority, but that the girl in the office with authority to sign his name would not necessarily do this if he were in town. Gerber was in California on August 17, 1960, and arrived back in St. Louis on the afternoon of August 18, 1960. He was back in his office on August 19, 1960. He testified that since he did not sign the title he would assume that it was sent to Huff before the 19th, but could not 'say for sure'. He also testified that he had no idea when his company received the title or whether it was in the company's possession on August 17, 1960.

"Robert L. Fortner, Vice President of St. Ann Motors, Inc., testified his company received the title for the car on August 18th; that the title would have been mailed out to Huff on the 18th; that it was mailed on the 18th, but that there was no letter or notation in the company's file to show that fact. Mr. Gerber, the President of St. Ann Motors, Inc., also testified that the company's file contained no copies of any letter of transmittal of the title in question. Huff, the purchaser of the car, dealt with one Lee Post presumably a salesman, although the buyer's order was prepared by Mr. Fortner, the Vice-President of St. Ann Motors, Inc.

"The automobile was described in said certificate of title as a 1957 Plymouth Savoy, 6-cylinder, 3¼ bore, 25 horsepower, motor No. P 31 110115. Therefore, the year, make, body style, and motor number on the certificate of title corresponded to the year, make, body style, and motor number of the vehicle sold and delivered to Larry Huff by St. Ann Motors, Inc. There was, however, a typographical error on the certificate with reference to the number of cylinders. The car in question had eight cylinders instead of six. This typographical error was on the certificate of title which St. Ann Motors, Inc. obtained from the prior owner, Universal C.I.T. Credit Corporation. Mr. Gerber testified that the certificate of title was for the car sold

Larry Huff. He stated '* * * we go by motor numbers rather than cylinders.'

"On August 19, 1960, Larry Huff drove said automobile into collision with a car car driven by appellant Joseph Sabella. Thereafter Joseph Sabella filed suit for personal injuries against Huff and in said action recovered a judgment in his favor in the sum of $2,500.00. Said judgment was not satisfied, and on September 15, 1961, Joseph Sabella brought this action.

"The Court made findings of fact and conclusions of law, some of which appellant attacks as erroneous. Among those was a finding that St. Ann Motors, Inc. mailed the assigned certificate of title to Larry Huff on August 18, 1960, and the conclusion that such mailing constituted delivery to Huff on that date on the theory that the United States Mail was Huff's agent.

"No employee of St. Ann Motors, Inc. who had knowledge of the date when said certificate was actually deposited in the mails testified at the trial. Nor was there a copy of any letter or notation in any of the files of St. Ann Motors, Inc. showing that someone did mail the certificate on that date. While it is true that Mr. Fortner testified that the certificate would have been mailed on August 18, and that he would say that it was so mailed, we are convinced from an examination of his testimony as a whole that his statement that the certificate was mailed on the 18th rested upon pure speculation and conjecture and was wholly insufficient to establish that fact. We, therefore, reject the testimony of Mr. Fortner, as we are authorized to do under the decisions: Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 791; Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 81 S.W.2d 313; Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292, 295; Wigmore on Evidence (3rd Ed.) Vol. II, § 475, 1. c. 561. It is our view, and we find as a fact, that the certificate of title was not mailed to Huff until after the accident, and that it was received by Huff

through the mail about one week after the date he bought the car, as testified to by Huff."

◼ From these facts, our conclusion is that the rule established in the Allstate Insurance Co. case (311 S.W.2d 41) and followed in the Haynes case (323 S.W.2d 505) is correct, decisive here and in accord with the principles stated by us in Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975, and Peper v. American Exchange National Bank in St. Louis, 357 Mo. 652, 210 S.W.2d 41. Sec. 301.210(1) requires: "In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall indorse on the same an assignment thereof, * * * and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer."

Sec. 301.210(4) provides: "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

As stated in the Allstate case (311 S.W. 2d 1. c. 47) concerning delivery of a motor vehicle without delivery of the certificate: "If we regard it as an executory contract to complete a sale in the future (as we think we must so view it, because we will not presume that the parties intended to do an illegal and unlawful act), then the user of the car pending completion was by consent and permission of the seller. * * * The delivery under the circumstances shown here carried with it, at the instant of the delivery, the implied permission to use and operate the automobile."

Furthermore, as stated in Haynes v. Linder, 323 S.W.2d 1. c. 512: "According to the decisions, a person who attempts to purchase an automobile but who never receives a certificate of ownership as required by Sec. 301.020 RSMo 1949, V.A. M.S., not only does not obtain title of ownership thereto but does not acquire an insurable interest therein. Personal Finance Co. of Missouri v. Lewis Investment Co., Mo.App., 138 S.W.2d 655, loc. cit. 656; Mathes v. Westchester Fire Ins. Co. of New York, Mo.App., 6 S.W.2d 66; Kelso v. Kelso, supra, 306 S.W.2d [534] loc. cit. 538.

"However, as indicated earlier it is not necessary that the driver of an automobile who is operating it with the permission of the owner-assured have an independent insurable interest in the automobile in order for him to become an additional assured under the omnibus clause and to be indemnified therein against liability for injury to others. Ohio Farmers Ins. Co. v. Lantz, 7 Cir., 246 F.2d 182, 185; 45 C.J.S. Insurance § 829c. (2) (a), p. 895; Allstate Insurance Co. v. Hartford Accident & Indemnity Co., supra."

◼ The requirements of § 301.210 are definite and positive; and strict compliance is required by our decisions (hereinabove cited) to pass title to any motor vehicle. Therefore, we hold that until the certificate of title properly assigned is delivered by the seller to the buyer the buyer does not become the owner. We further hold that, when the seller delivers a motor vehicle to the buyer without delivering to him the certificate of title, he is permitting the buyer to use the vehicle so as to make him an additional insured, under the policy provision herein involved, until title passes to him.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff against defendant for the amount sought in his petition.

All concur.