**Roy L. KAHN, Appellant,**

v.

**Harold B. LOCKHART, Universal Underwriters Insurance Company, and State Farm Mutual Automobile Insurance Company, Respondents.**

**No. 24164.**

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

Motion for Rehearing and for Transfer to Supreme Court Denied June 7, 1965.

Thaine Q. Blumer, Kansas City, for appellant.

C. Thomas Carr, of Sheridan, Baty, Markey, Sanders, Edwards & Carr, Thomas E. Deacy, Jr., Edward W. Mullen, Deacy & Deacy, Kansas City, for respondents.

HUNTER, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County in favor of two insurance company garnishees and against Roy L. Kahn. The case was tried to the court without a jury upon a stipulation of facts, and the questions presented there and here concern the coverage provided by the insurance policies of garnishees. Our duty is to review the case upon both the law and the evidence as in suits of an equitable nature and to enter or direct such judgment as justice requires. We are not to set aside the judgment below unless it is clearly erroneous. Civil Rule 73.01, V.A.M.R.

On April 24, 1956, about 12:30 a. m., at 31st and Van Brunt Boulevard in Kansas City, Harold B. Lockhart was involved in an automobile collision with Roy L. Kahn which resulted in a $4,000 personal injury judgment against Lockhart. At the time of the collision Lockhart, who was an employee of Rudy Fick Ford, Inc., but was on his own personal business, was driving a 1949 Ford automobile.

Lockhart was the owner of a policy of liability insurance issued by garnishee State Farm Mutual Automobile Insurance Company with a policy period from February 3, 1956, to July 25, 1956. This policy described the insured automobile as a 1949 Mercury. Also, at the time of the collision Rudy Fick Ford, Inc., was the owner of a policy of liability insurance issued by garnishee Universal Underwriters Insurance Company. We will discuss these two policies in some detail later.

Pertinent to the issues is the history of the acquisition and use by Lockhart of the two automobiles. According to the stipulation the 1949 Ford came into his possession in the following manner: "(a) Defendant, for some time prior to the collision above referred to, was a mechanic employed by Rudy Fick, Inc., a corporation, engaged in the automobile sales and service business in North Kansas City, Missouri, and a licensed automobile dealer in the State of Missouri.

"(b) Rudy Fick, Inc., took said 1949 Ford automobile in as a trade from Richard A. Webb, Route 2, Cowgill, Missouri, on, or several days before, October 20, 1955, and the said Richard A. Webb delivered to Rudy Fick, Inc., a Missouri certificate of title to said 1949 Ford automobile showing

upon the face thereon the name of the owner as 'Richard A. Webb' and signed upon the reverse side by the said Richard A. Webb; that the name of the new owner was left blank on said certificate of title; that Richard A. Webb's signature was not notarized at that time.

"(c) Thereafter a purchase order dated October 20, 1955, was signed by defendant to purchase said automobile from Rudy Fick, Inc. as a used car for the total cash selling price of $150.00 * * *; on October 21, 1955 the car invoice * * * was issued by Rudy Fick, Inc., to Lockridge Garage, Harrisonville, Missouri;

"(d) That on October 20 or October 21, 1955, Rudy Fick, Inc. delivered to defendant and defendant took possession of said 1949 Ford automobile and paid Rudy Fick, Inc. the sum of $150.00 and Rudy Fick, Inc. gave him the aforesaid certificate of title; it was the intention of Rudy Fick, Inc. and of the defendant that the defendant be the owner of the said automobile in all respects´ from that time forward; that defendant then drove said 1949 Ford automobile to Mayview, Missouri; that defendant did not thereafter drive the automobile until after April 16, 1956; that although said automobile was in need of repairs, it was driveable;

"(e) That on December 16, 1955 Dora G. Anderson, an employee of Rudy Fick, Inc. notarized the signature of Richard A. Webb appearing on the reverse of the certificate of title to said 1949 Ford automobile; that the name of the new owner of said automobile remained blank;

"(f) That prior to April 24, 1956 (the date defendant collided with plaintiff) defendant was the owner of a 1949 Mercury automobile, Motor No. 9CM111081; that said automobile was insured by garnishee State Farm Mutual Automobile Insurance Company as hereinafter described; that on April 16, 1956, defendant's Mercury automobile was damaged in a collision; the fact of this collision was reported to State Farm Mutual Automobile Insurance Company prior to April 24, 1956; that said Mercury was sold by defendant for salvage prior to April 24, 1956;

"(g) That between April 16, 1956 and April 24, 1956 defendant repaired the above referred to 1949 Ford automobile at Mayview, Missouri, and at Rudy Fick, Inc., in North Kansas City, Missouri; that between April 16, 1956 and April 24, 1956 defendant commenced to drive said 1949 Ford automobile."

We first examine those portions of garnishee State Farm Mutual's policy which appellant claims provide coverage to Lockhart. The policy provides: "The company * * * agrees with the named insured * * * I (1) To pay all damages which the insured shall become legally obligated to pay because of (A) bodily injury sustained by other persons * * * caused by accident arising out of the ownership, maintenance or use * * * of the automobile. * * *

"III. Automobile Defined. (a) * * * 'automobile means: * * * (3) Temporary Substitute Automobile * * * an automobile not owned by the named insured, * * * while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"IV. Use of Other Automobiles. * * * . . . if during the policy period such named insured * * * owns an automobile covered by this policy * * * such insurance as is afforded by this policy under coverages A, * * * with respect to said automobile applies to any other automobile * * *".

"(c) Insuring Agreement IV does not apply:

(1) To any automobile owned by, registered in the name of * * * or furnished for regular use to * * * the named insured * * *".

Appellant contends that the certificate of title Lockhart received to the 1949 Ford was incomplete in that it did not list him as owner and was not notarized; that it remained incomplete in that it was not filled in as to the name of the purchaser, and therefore, Lockhart was not the legal owner of the automobile, nor its registered owner.

Appellant is correct in his contention that Lockhart was driving a non-owned automobile at the time of the collision. Section 301.210 RSMo 1959, V.A.M.S. makes any purchase or sale of a motor vehicle unlawful, fraudulent and void "unless at the time of delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof. * * *" By the express provisions of this statute no title passes to the purchaser of a used automobile in Missouri unless the seller's certificate of title, properly endorsed and acknowledged before a notary public is transferred to the purchaser at the time of the delivery of the vehicle or at least sufficiently soon to be considered a part of the contemporaneous or continuous transaction. Sabella v. American Indemnity Company, Mo.Sup., En Banc, 372 S.W.2d 36; Comment, Titles to Used Automobiles in Missouri, 28 Mo.L.Rev. 121. We need not explore Lockhart's right or authority to complete the certificate of title by filling in his name as purchaser for he had failed to do this for the many months from the date of his alleged purchase, up to and including the date of the accident. See, Pearl v. Interstate Sec. Co., 357 Mo. 160, 206 S.W.2d 975.

Appellant further reasons that since on the date of the collision Lockhart was driving a non-owned automobile instead of and in place of his 1949 Mercury automobile which had been damaged by a collision which had been reported to State Farm Mutual, the quoted provision III, sub-paragraph (a) (3), which provides coverage on a non-owned automobile while temporarily used as a substitute applies.

A discussion of the meaning of the word "temporary" is to be found in Little v. Safeguard Insurance Company, Louisiana, 137 So.2d 415, 419: "The word 'temporary' has no fixed meaning in the sense that it designates any fixed period of time. It is a word used in contra-distinction to permanent. * * *"

"Plaintiffs also cite Fleckenstein v. Citizens' Mutual Automobile Insurance Co., 326 Mich. 591, 40 N.W.2d 733, in which the court said:

"'In construing the expression "temporary use" as employed in defendant's insurance policy, the meaning most favorable to plaintiff must be accepted. Pastucha v. Roth, 290 Mich. 1, 287 N.W. 355. As commonly accepted 'temporary' is an antonym of "permanent." Plaintiff's use of the Chevrolet was either temporary or permanent. The record would not justify conclusion as a matter of law that plaintiff's use or his intended use of the Chevrolet was permanent. * * *'"

Our duty is to determine from the stipulated facts and their reasonable inferences whether or not the particular use of the Ford was temporary within the intendment of the liability insurance policy. Central Nat. Insurance Co. of Omaha v. Sisneros, D.C., 173 F.Supp. 757; Lewis v. Bradley, 7 Wis.2d 586, 97 N.W.2d 408; Canal Insurance Company v. Paul, 51 Tenn. 446, 369 S.W.2d 393 (used substitute car for six weeks); Annotation, 34 A.L.R.2d 936, 950; Densmore v. Hartford Accident & Indemnity Co., D.C., 221 F.Supp. 652.

It is apparent from the stipulation that the 1949 Ford at the time Lockhart acquired it for $150 was in need of repairs and, inferentially, was not in ordinary operable condition. While he drove it from Rudy Fick, Inc., to his home he did not drive it thereafter for six months and until after his Mercury had been destroyed and disposed of as junk. He then had some repairs made on the Ford and for the first time began using it. Within less than

six days of that, he had the collision in question. Since he was not its owner he was not entitled to obtain a state license for it. There is no evidence he was making any effort to get title to it or to get a state license for it or taking any action to indicate his use of it was other than temporary and occasioned by the destruction of his Mercury automobile.[1] As a reasonable inference from the related facts we find Lockhart at the time of the April 24, 1956 accident was driving "an automobile (Ford) not owned by the named insured (Lockhart) * * * while temporarily used as a substitute for the described automobile (Mercury) when withdrawn from normal use because of its * * * destruction" and was therefore within the intended coverage of the policy.

■ Garnishee State Farm Mutual also contends that Insuring Agreement V of the policy which defines the policy period provides the policy "applies to * * * accidents * * * provided the described automobile is owned, maintained and used for the purposes stated in the declarations" caused the policy to terminate when Lockhart sold the Mercury for salvage. This contention is not sound. The policy itself in quoted Section III(3) provides for temporary substitute automobile coverage when the described automobile is withdrawn from normal use because of loss or destruction. The Mercury was withdrawn by destruction and it is wholly unreasonable to construe the policy to mean a destroyed automobile may not be disposed of as junk or that if it is a forfeiture of the policy results. The intent expressed in Agreement V insofar as it applies to Agreement III is that the insured must have at least some time during the policy period owned the described automobile and the described automobile when so owned must have been withdrawn from normal use because of breakdown, repair, servicing, loss or destruction and an automobile not owned by the named insured be temporarily used as a substitute for it. This same contention that garnishee unsuccessfully advances has been rejected in other cases.

In McKee v. Exchange Insurance Assoc., 270 Ala. 518, 120 So.2d 690, where the insured was involved in an automobile accident while using his mother's automobile as a substitute for his own which had been destroyed some four months earlier, the court ruled the insured's use was a temporary use entitling him to coverage. The court stated, loc. cit. 692, "Apparently, the court below took the position that since the described automobile was no longer owned by Clark after its destruction there could be no substitution for such car. With this position we cannot agree."

In Freeport Motor Casualty Co. v. Tharp, 338 Ill.App. 593, 88 N.E.2d 499, the insured's automobile broke down completely because of a crack in the engine block and was sold by the insured as junk. In holding that this sale did not terminate coverage under the "temporary use of substitute automobile" clause the court stated, loc. cit. 500, "Forfeitures of insurance contracts * * * are not favored in the law, and unless the right to such forfeiture is clearly shown no forfeiture may be invoked. Scott v. Inter-Insurance Ex., 352 Ill. 572, 186 N.E. 176."

Having determined that Lockhart was provided coverage under Insuring Agreement III, we need not rule appellant's contention that Insuring Agreement IV, "Use of Other Automobiles" provides coverage. It is noteworthy, however, that Insuring Agreement IV does provide coverage to Lockhart unless it should be determined the Ford was "furnished for regular use to * * * the named insured. * * *"

Appellant Kahn contends that garnishee State Farm Mutual is estopped to raise any defense it claims under its policy by

---

1. While it is no part of the record before us, and we do not consider it, it is nonetheless interesting to be advised during oral argument that the Ford had a Rudy Fick dealer's license on it at the time of the accident.

participating in the trial even though it has obtained from appellant a reservation of rights agreement. Having decided for appellant Kahn on other grounds we do not reach or rule this contention.

We proceed to determine the coverage question involved in garnishee Universal Underwriters Insurance Company's policy. It is garnishee's contention its policy does not afford any coverage because Rudy Fick, Inc., did not become the owner of the 1949 Ford automobile and had no insurable interest therein. The stipulation reveals that at the time Rudy Fick, Inc., obtained the 1949 Ford from Richard A. Webb on or a few days before October 20, 1955, it received Richard A. Webb's certificate of title to the Ford but *this certificate of title was not acknowledged by any notary public* as called for in the assignment form, and the name of the new "owner" was left blank, *and it was not until December 16, 1955* that Dora G. Anderson, an employee of Rudy Fick, Inc., *notarized the signature of Richard A. Webb.* Rudy Fick, Inc., never filled in nor had filled in its name as new owner, this space being left blank.

As earlier mentioned, by mandate of Section 510.310, no title passes to the purchaser of a used automobile unless the seller's certificate of title, *properly endorsed and acknowledged before a notary public,* is transferred to the purchaser. In speaking of this requirement in 28 Mo. L.Rev. 121, loc. cit. 127, the author stated, "The situation where the seller endorses his certificate, but leaves the space for the assignee's name blank and does not acknowledge his signature before a notary prior to delivery to the purchaser, is an all too common one, particularly where the purchaser is a dealer and for various reasons prefers to have the title 'in blank'. This problem has given rise to much of the litigation over automobile titles in Missouri, because of the express statutory requirement that the certificate be properly assigned and acknowledged before delivery in order for title to pass to the purchaser. The position of the Missouri Supreme

Court is that there is no such thing as 'substantial compliance' with this title law—either the provisions are complied with or they are not."

In Pearl v. Interstate Securities Co., supra, 206 S.W.2d loc. cit. 978, our Supreme Court En Banc stated, "Section 8382 requires for a valid sale of a used automobile that the holder of the certificate of ownership must endorse thereon an assignment in the form prescribed by the Commissioner. The statute does not require an acknowledgment before a notary, but the form prescribed includes such an acknowledgment. We think that the statutory authority was broad enough to authorize the Commissioner to require an acknowledgment as a part of the assignment form he was required to prescribe." * * "For dealers, the Commissioner is authorized to make forms differing from those used for individuals. Documents in evidence show such forms, so that when a dealer is the buyer, while he must take an assignment directly to himself, he may make a reassignment direct to his vendee without getting a new title certificate in his own name as required in the case of sales between individuals. Instead the new certificate may be issued direct to the dealer's vendee.

"Plaintiff did obtain the title certificates with assignments thereon signed by each owner at the time the cars described therein were delivered to him as Section 8382 required. However, plaintiff did not fully comply with the statute because he did not have the assignment of the certificates to him by the holders completed in the form prescribed by the Commissioner which included an acknowledgment before a notary. He had only an unacknowledged assignment, and this was not sufficient to vest the legal title in him." * * * Nor would he or anyone else have had the right to fill in the name of Security as assignee from the holders because he was the buyer and Section 8382 required the assignment to be made to him. To do so would be a misdemeanor. Sec. 8404(d), R.S.

1939, Mo.R.S.A. Nevertheless, he had implied authority to fill in his own name because it was the intention of the parties that the same be made to him. National Bond & Investment Co. v. Mound City Finance Co., Mo.App., 161 S.W.2d 664. Since a notary would not always be immediately available when an agreement for a sale is made, surely the buyer should have a reasonable time to complete the assignment by obtaining the seller's acknowledgment." To the same effect, see State ex rel. Payne v. Wilson, Mo.App., 207 S.W.2d 785; Jacobson v. M. B. Thomas Auto Sales, Mo.App., 234 S.W.2d 813.

■ Applying the rule of the Pearl case, supra, to the instant situation it is clear that Rudy Fick, Inc., never obtained title to the 1949 Ford. Sabella v. American Indemnity Company, supra; Haynes v. Linder, Mo.App., 323 S.W.2d 505. Rudy Fick, Inc., never filled in its name as transferee. It did not obtain a notarized acknowledgment while it possessed the Ford car. It obviouly intentionally avoided the mandatory requirements of Section 510.310 by its actions, and it was not until weeks after Rudy Fick had "sold" the Ford to Lockhart that the certificate, still blank as to the transferee's name, was notarized.

■ It is the settled rule that it is not necessary that the insured, Rudy Fick, Inc., have an insurable interest in the automobile *insofar as liability insurance is concerned.* Haynes v. Linder, supra; Hall v. Weston, Mo.Sup., 323 S.W.2d 673.

Turning to those provisions of garnishee Universal Underwriter's Policy relied upon by the parties, the January 31, 1956, endorsement states: The "Business of the named insured is Automobile Sales and Service". * * * "(1) Owned automobile—an automobile owned by the named insured; (2) Hired automobile—an automobile * * loaned to, the named insured * * * not owned by or registered in the name of (a) the named insured." * * * " * * * such insurance as is afforded * * * applies to the hazard defined below, subject to the following provisions: A. Hazard Defined. The * * * use of the premises for the purpose of an automobile dealer, repair shop, * * * and all operations necessary or incidental thereto * * * and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the *occasional use* for * * * non-business purposes *of (1) any automobile* owned by or *in charge of the named insured* and used principally in the above defined operations, * * *." (Emphasis ours). * * * "B. Definition of Insured * * * The unqualified word *insured* includes the named insured and also includes * * * (2) *Any * * * employee* * * * while using an automobile covered by this policy * * * provided the actual use of the automobile is by the named insured or with his permission."

■ Our first question is whether Lockhart comes within the policy definition of an "insured". Since Lockhart was an employee using an automobile that Rudy Fick, Inc., had obtained in the course of its used automobile dealer business and Lockhart was driving it with the permission and consent of Rudy Fick, Inc., we deem Lockhart was an "insured" under the policy. Rudy Fick, Inc., although not the owner of the car, had received it under circumstances permitting it to permit another to use it. Haynes v. Linder, supra. As stated in the Sabella case, supra, loc. cit. 40, "when the seller delivers a motor vehicle to the buyer without delivering to him the certificate of title, he is permitting the buyer to use the vehicle * * * until title passes to him."

■ The second question is whether Lockhart's use of the Ford came within the hazards insured against. Since Rudy Fick, Inc., did not own the Ford, for coverage to apply the automobile must be "in charge of the named insured and used principally in the above defined operations." It is our view that the Ford was not "in charge of the named insured" within the meaning of

the policy. At one time, October 20, 1955, Rudy Fick had been "in charge of" the Ford, having just obtained it from its owner, Richard A. Webb. However, in the course of its business Rudy Fick, Inc., on October 21, 1955 had given what it intended as irrevocable possession of the automobile to Lockhart and Lockhart had been in such possession for six months and until April 24, 1956. During that time non-owner Rudy Fick, Inc., was not in the process of transferring or having the title transferred to Lockhart; and had nothing to do with the car. While the giving of possession or the lending of a car for any reasonable or ordinary period by a dealer to a potential purchaser or to one in the process of purchasing would not change the status of the dealer to one not "in charge of the automobile" within the meaning of the policy, the present circumstances are such as to make it unrealistic to find as a fact from such evidence that the Ford was "in charge of" Rudy Fick, Inc., within the intendment of the policy terms and we do not do so.

Additionally, while the Ford was obtained by Rudy Fick, Inc., as a trade-in and was there for resale, and thus was "used principally in the above defined operations", i. e. "automobile dealers", it is highly questionable that one could reasonably view the car as having remained in the general status of being used principally in the Rudy Fick, Inc., automobile sales and service business some six months after it had been disposed of by Rudy Fick, Inc., to Lockhart. The evidence before us fails to convince it was still so principally used. This is a question on which Kahn as plaintiff has the burden of proof and we find he failed to carry that burden of proof.

Appellant Kahn cites Rivas v. Killins, Mo.App., 346 S.W.2d 698, as authority for holding the Ford was used principally in the car dealer's business operations. However, the automobile there involved was a part of the car dealer's stock of cars for sale and *remained* such even though it was being temporarily used by another. The Rivas case facts are so different from ours that it is neither controlling nor persuasive of the instant case.

Garnishee Universal Underwriters Insurance Company also contends the trial court did not err in entering judgment for it because Lockhart failed to give it notice of the subject collision and notice of the filing of suit against him until two years and eleven months after the collision occurred and over two years after suit had been filed, and that such failure breached the notice and co-operation provisions of the policy which were a condition precedent and entitled garnishee to deny liability under the policy. Having ruled that Garnishee Universal Underwriters Insurance Company's policy does not cover the subject collision it is unnecessary for us to consider this contention.

Accordingly, the judgment in favor of Garnishee Universal Underwriters Insurance Company is affirmed; the judgment in favor of Garnishee State Farm Mutual Automobile Insurance Company is reversed; and the cause is remanded with directions to the trial court to enter judgment in accordance with this opinion for appellant Kahn and against garnishee State Farm Mutual Automobile Insurance Company.

All concur.