Petra RIVAS, Respondent,

v.

Lonnie R. KILLINS and Gene Glenn, Defendants,

Travelers Indemnity Company, Garnishee, Appellant.

No. 23311.

Kansas City Court of Appeals.

Missouri.

April 3, 1961.

Don M. Jackson, Kansas City, for appellant.

Haskell Imes, Kansas City, for respondent.

SPERRY, Commissioner.

Petra Rivas sued Lonnie R. Killins and Gene Glenn, defendants, for damages due to personal injuries received by her when an automobile in which she was a passenger collided with a 1950 Oldsmobile alleged to have been owned by Glenn and then being operated by Killins, on Troost Avenue, Kansas City, Missouri. Plaintiff had a judgment against Killins, alone, for $2,750. (The Court directed a verdict for Glenn and Rivas appealed: that record is also lodged here.) No appeal was taken in the instant case, and the Travelers Indemnity Company, Glenn's insurer, was garnisheed. The trial court entered judgment for garnishee but, on motion, set it aside and ordered a new trial. Garnishee appeals.

Prior to and on April 15, 1958, when the collision occurred, Mr. Glenn owned and operated a used automobile sales agency in Kansas City. Killins had been employed by him for something more than a year but, about April 7th, he was discharged because of poor business. Killins had, years before, sustained a serious and disabling back injury. He was unable to walk to and from work, or to other places, and needed an automobile for transportation. Killins testified, by deposition, that he sought to purchase this Oldsmobile from Glenn but, because of the price and of Killins' lack of credit, Glenn told him that he could not sell that car to him; that he would let him use it to go to and from work for a while; that he could keep it and drive it until Killins found a car that he could buy, or until Glenn found a car in a price range that he could afford to sell to Killins, or until Glenn should sell the Oldsmobile to someone else, in which case he was to receive it back for such sale and delivery; that this car was a good car and that when he sold it he would have to get all his money at one time so that he could replenish his stock; that he did not have on hand too many cars at that time. Killins' deposition was taken by plaintiff in the damage suit and introduced into the record in that case as well as in this action.

Travelers had issued its policy to Glenn. It contained the following clauses which are pertinent:

"Definition of Hazards

"Division 1—Premises—Operations—Automobiles

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the *ownership, maintenance or use of any automobile in connection with the above defined operations*, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile *owned by or in charge of* the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named unsured [sic], a partner therein, an executive officer thereof, or a member of the household of any such person. (Emphasis ours.)

\*　　\*　　\*　　\*　　\*　　\*

"111. Definition of Insured. With respect to the insurance under Coverages A, B and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the

use thereof, provided the actual use of the automobile is by the named insured or with his permission."

At the time the collision occurred Killins was driving the car from his place of employment to a "drive-in" lunch counter, which, he stated, he frequented because he did not have to get out of the car in order to eat, and intended to pick up a head gasket "whenever" he "came back". Attached to the vehicle was a dealer's license plate legally issued to Glenn.

Garnishee claims here, as a defense to its liability under the above mentioned policy, that plaintiff failed to prove that Glenn owned the automobile involved herein. It claims that there was no proof of ownership, or of title being vested in Glenn, such as meets the requirements of the applicable sections of Chapter 301 V.A.M.S., and that, therefore, plaintiff is not legally entitled to compel garnishee to pay off and discharge the judgment against Killins; that, under the terms of the policy, it is not legally liable unless plaintiff proved Glenn's ownership of the automobile involved in accordance with the above statutory provisions.

■■■ The automobile was a part of Glenn's stock of cars for sale. He would not sell it to Killins because Killins could not pay for it in cash, but he had it for sale. He permitted his dealer's license tag to be attached to it and authorized Killins to drive it until Glenn found a car he could afford to sell to Killins, until Killins found a car, or until Glenn found a suitable *sale for this car*. Glenn stated in evidence, in the damage suit trial, that he owned the sales agency and that he presumed that he owned this automobile. It was, admittedly, a part of Glenn's stock of cars for sale at his place of business where he was licensed to sell automobiles. He would have sold it to Killins if Killins could have paid the price that Glenn demanded but, since he could not, Glenn told Killins that he would let him drive it until such time as he found a sale for it. Killins, who had worked for Glenn in his business said that the car be-

longed to Glenn. This constituted substantial evidence of Glenn's ownership of the automobile. It is prima facie proof of ownership. Blashfield, Cyclopedia of Automobile Law and Practice, vol. 10 a, Section 6569, pages 16 et seq.; Waters v. Hays et al., Mo.App., 130 S.W.2d 220, 222, 223; Switzer v. Aldrich et al., 307 N.Y. 56, 120 N.E.2d 159, 160. That evidence might have been contradicted by proof of other facts, but it was not. Every fact in evidence pointed to Glenn as the owner and he himself stated that he presumed it was his. The jury was fully justified in arriving at the same conclusion that Glenn announced. It was not necessary, in this case, that plaintiff prove ownership of title by Glenn according to the strict provisions of the motor vehicle law, as is contended by garnishee. Crawford v. General Exchange Ins. Corp., Mo.App., 119 S.W.2d 458, 459; Garrison v. J. L. Querner Truck Lines, Inc., Mo.App., 308 S.W.2d 315, 318.

■■■ The automobile was owned by garnishee and was used in his business as a dealer in cars. He operated a sales agency and this automobile was a part of his stock in trade. By loaning it to Killins he did not withdraw it from his stock of merchandise but specifically stated that if he should find a sale for it he wanted possession of it for that purpose. It is difficult to imagine an article used principally in a business if a part of the stock in trade is not such an article. It was used "principally" in the business operations of the Glenn Motor Company. He had no use for it whatever except as an item of merchandise; and, but for the sales he might make, he could not and would not remain or be in the used car sales business. Any automobile held or owned by a dealer and actually being offered for sale, is used principally in his business. The fact that it was, at the time, temporarily loaned to Killins is not controlling of its principal use, no more than that other automobiles in stock were temporarily "stored" on the lot. This case, in that respect, is materially different, on the facts, from that of Hart-

ford Acc. & Indem. Co. v. Casualty Underwriters, D.C., 130 F.Supp. 56, cited by garnishee.

On the authority of the quoted portion of the policy, "Definition of Insured", garnishee contends that it is not liable because the "actual use of the automobile" at the time of the collision, was not with the permission of Glenn. This contention is based on garnishee's contention that Killins' permissive use extended *only and strictly* to his right to drive it to and from his place of employment at a garage owned by Mr. Franks.

Killins and Glenn were both defendants in the damage suit trial. Killins did not appear at the trial but his deposition had been taken by plaintiff. There he stated that he had permission to drive the car only to and from his place of employment, but he admitted that he had also driven it to lunch and out to the homes of customers who wanted their cars inspected, or worked on. Killins admitted in the deposition that a statement had previously been taken by a stenographer, that it had been read to him, and that he had signed it.

He admitted that he stated therein that Glenn told him to take the automobile here involved and use it until he could get another and that he gave him no instructions as to how to use it, "Where I could go." He made a feeble effort to explain the contradictions between his testimony given in the deposition and statements previously made in sworn "statement." The jury was authorized to believe which of such contradictory statements it chose; and, if it chose to believe what Killins admitted that he said in his statement, it could find that he was authorized to drive and operate the Oldsmobile automobile without restriction. If it chose to find that fact under the evidence, then it was authorized to find for plaintiff in this proceeding.

The order granting plaintiff a new trial is affirmed and the cause is remanded.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.