George Shilling, Plaintiff and Counter-Defendant, v. M. D. Campbell, d/b/a Campbell Grain and Seed Company, Defendant and Counter-Claimant.

Gen. No. 62–M–19.

Fourth District.

December 12, 1962.

Jack H. Anderson, of Charleston, for appellant.

W. C. Pearce, of Fairfield, for appellee.

HOFFMAN, JUSTICE.

Plaintiff, George Shilling, filed suit against defendant M. D. Campbell, doing business as Campbell Grain and Seed Company, to recover for the purchase price of soybeans which he claimed he had sold the defendant and for damages to the bins in which the soybeans were stored. After the alleged sale, the beans were completely destroyed by flood waters that reached the bins on plaintiff's premises where the beans were stored. In his suit, plaintiff claimed $6,450 as the price of the beans and $2,500 for damage to the bins. The Court, sitting without a jury, awarded plaintiff $7,280, and from this judgment, defendant appeals.

In this appeal, defendant claims that the order of the trial court should be reversed or, in the alternative, remanded for a new trial as being against the manifest weight of the evidence.

It is his theory that plaintiff failed to prove that title to the beans had passed to defendant and that therefore, the risk of loss, pending delivery, was upon the plaintiff.

On the other hand, plaintiff contends that the risk of loss was on the defendant because title to the beans had passed and because actual delivery of the beans to the defendant had been delayed through the fault of the defendant. He further argued that failure of defendant to take delivery of the beans as agreed upon was the cause of the damage to his bins.

Plaintiff was a farmer living near Browns, Illinois. Defendant operated an elevator in West Salem about 12 miles away. In February, 1961, plaintiff went to defendant's place of business with a sample of beans he had raised to see if he could sell them as seed beans. The beans were checked out by an employee of defendant and on February 14 defendant wrote a letter to plaintiff as follows:

"Feb. 14, 1961

Mr. George Shilling,
Browns, Illinois.
Dear Mr. Shilling:

We have looked at your sample of Clark Soybeans and understand you have about 1500–1600 bushels of beans like your sample. We could use this many Clarks if they are like your sample at $2.60 bushel delivered to our elevator as soon as we can clean these and have a place to sack them. That will be the last of March. That way you would not have to turn them in for taxes if you have them sold to us. Please let us know as soon as possible if you decide to sell these. That is about all we will need for retail and would not be able to pay this for oil beans.

Sincerely,
Campbell Grain & Seed Co.
/s/ Maurice Campbell"

On February 28, 1961, defendant wrote a second letter to the plaintiff which read as follows:

182

Mr. George Shilling,
Browns, Illinois.
Dear Mr. Shilling:

With the rapid advance in the soybean market, you would understand that our letter of Feb. 14th would have been out of line almost before you got it.

When you think you might be ready to sell your soybeans, please be sure to get in touch with us. We might be able to use your Harosoy's, too, if we can buy your Clarks. We are paying $2.90 for oil beans today and have no idea what might happen in the next couple days.

Sincerely,
Campbell Grain & Seed Co.
/s/ Maurice Campbell"

Several days later, plaintiff visited defendant at his office, and the two parties talked together for the first time. No deal was made that day. On March 11, defendant sent plaintiff a card saying he wanted plaintiff to contact him before he sold his beans. On March 14, plaintiff again went to defendant's office where the two had a conversation about the sale of plaintiff's beans. Defendant testified that he then offered plaintiff $3 a bushel delivered; that plaintiff said he could get that at Browns and wouldn't have to deliver them so far; that defendant then offered to buy them at $3 a bushel and haul them, whereupon plaintiff agreed.

After the conversation, the two parties signed a written document titled "Confirmation." It was dated March 14, 1961. It listed the buyer as the defendant, and the plaintiff as seller; where it said "Via," they filled in "Buyers truck"; Time of shipment was stated as "April, 1961"; terms, "Cash." It called for "Approx.

1400–1450 bu. Clark Soybeans; 700 bu. Harasoy Soybeans." The price shown in the column under price was $3 bu. "Bulk basis f. o. b. bin on farm near Browns."

The form apparently was used by defendant in sales made by him, as it contained fine print to the effect that Campbell Grain & Seed Co. warranted to the extent of the purchase price that seeds sold were as described on the container within recognized tolerances.

Plaintiff stated that about April 24 defendant called by phone and asked about picking up the beans. It had rained the night before and plaintiff told defendant he might get stuck. Defendant then responded that he would get in touch with plaintiff in a few days. Defendant claimed, however, that plaintiff promised to call him when it was dry enough to get in with a truck and get the beans. This was denied by plaintiff.

On May 7, plaintiff, being concerned for the safety of the beans, due to flood waters, went to defendant's place to see him. Since he wasn't in, he phoned defendant at his home. They discussed the rising waters. Here the testimony conflicted again. Plaintiff claims he advised defendant of the danger. Defendant said that plaintiff did call him and told him about the water, but that plaintiff didn't think it was necessary to do anything right then. Defendant said he then told plaintiff to call him if things got worse. At 10:10 on the same night, plaintiff called defendant again. Defendant says that in this second call, plaintiff again claimed it wasn't necessary to do anything right then. Near 2:00 o'clock on the following morning, plaintiff again tried to call defendant but couldn't reach him as the service was disrupted.

On May 8, 1961, in the early hours of the morning, the rising flood waters reached the bins and inundated the beans. This caused the beans to swell to such an

extent that they were completely destroyed and the bins were extensively damaged. Attempts were made to salvage the beans, but to no avail.

■ The question to be decided is which party must bear the loss incurred. Both parties seek refuge in Sections 18, 19 and 22 of the Uniform Sales Act. These sections provide as follows: That where there is a contract to sell specific goods the property in them is transferred to the buyer at such time as the parties to the contract intend and for the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case; that certain rules may be followed for ascertaining the intention of the parties as to the time at which the property and the goods is to pass to the buyer; and that unless otherwise agreed the goods remain at the seller's risk until the property therein is transferred to the buyer, except that where delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault. (Ill Rev Stats 1961, c 121½, §§ 18, 19 and 22.)

Pursuant to these sections, the trial judge was confronted with determining what the intention of the parties was regarding the transfer of the property in the goods. To do this it was incumbent upon him to regard "the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case." The trial judge was also confronted with determining whether or not the applicable rule regarding risk of loss was altered because of the delay in delivery due to the fault of the defendant.

■ All of these determinations presented factual questions which the trial judge, sitting without a jury, was required to resolve. We may not set such deter-

185

minations aside unless they are contrary to the manifest weight of the evidence. If they can be supported by the evidence the judgment must be affirmed. Here there were disputed questions of fact arising out of the conflict in the testimony. We have carefully reviewed all the evidence and we find it ample to support the conclusion that it was the intention of the parties that the defendant pick up the beans in April; that there was no obligation upon the plaintiff to help in, assist, or do anything to consummate this act of physical delivery; that the failure to pick up these beans in April resulted solely from the fault of the defendant; and that the loss would not have occurred except for such fault. This is sufficient to support the judgment.

The judgment of the Circuit Court of Edwards County is affirmed.

Affirmed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.