**INDIANA INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**FIDELITY GENERAL INSURANCE COMPANY, Defendant-Appellant.**

No. 16351.

United States Court of Appeals
Seventh Circuit.

March 13, 1968.

2. P-K refers to P-K News Service of Junction City, Kansas.

Jay A. Canel, Erwin I. Katz, and Theodore J. Cooper, Canel & Canel, Chicago, Ill., for appellant.

William S. Dunning, Frank J. Pause, John M. Beverly, Chicago, Ill., Beverly & Pause, William S. Dunning, Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In this diversity action, the Indiana Insurance Company ("Indiana"), an Indiana corporation, sued Fidelity General Insurance Company ("Fidelity"), an Illinois corporation, to recover what Indiana expended in disposing of a lawsuit against James A. Baum.

Baum, a resident of Hammond, Indiana, had an Indiana Family Automobile Policy covering a 1959 Ford station wagon which he had purchased in 1963 from Tri State Motors, a Chicago used car business. In May 1964, Baum's wife returned the 1959 Ford to Tri State for repairs. While the station wagon was being repaired, Tri State lent the Baums a 1961 Ford which was being held for sale on its used car lot. Tri State had obtained the 1961 car from Southside Ford Truck Sales, and it was billed to

Tri State although the certificate of title was not then assigned.

On May 6, 1964, Baum was driving the 1961 Ford "loaner" and was involved in an accident in Hammond, Indiana, resulting in a $75,000 lawsuit against Baum in the Superior Court of Lake County, Indiana. Two months after the accident the certificate of title to the 1961 Ford was assigned to Tri State by Southside Ford Truck Sales.

Indiana undertook to defend the suit against Baum, while Fidelity contended that its Garage Liability Policy issued to Tri State did not provide coverage as to the 1961 Ford. The Fidelity policy covered the use for nonbusiness purposes of any automobile "owned" by Tri State "and used principally in garage operations." The policy defined "garage" as including an automobile sales agency.

In settling the personal injury suit against Baum for $25,000, Indiana incurred other miscellaneous expenses. Pursuant to the subrogation clause in the policy between Indiana and Baum, Indiana claimed $27,733.41 from Fidelity in the present lawsuit.

In response to interrogatories propounded by the District Court, the jury found that Tri State was the owner of the 1961 Ford at the time it was loaned to Baum and that the loan was not for the purpose of business operations or other occasional business use of Tri State Motors[1] within the meaning of the liability part of the Fidelity policy.

Thereafter, the District Court concluded as a matter of law that the 1961 Ford was "used principally in garage operations" within the meaning of the Fidelity policy,[2] and judgment was entered in favor of Indiana.

On appeal, Fidelity first urges that the jury found the automobile was owned by Tri State due to two assertedly erroneous instructions.

Indiana's Instruction 2A provided as follows:

"There was in force in the State of Illinois at the time that the 1961 Ford was delivered by Southside Ford Truck Sales, Inc. to Tri-State Motors a certain Statute which provided that:

" 'Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place.'

"You are to consider this Statute together with all of the other evidence in this case in determining who owned the 1961 Ford at the time it was loaned to James Baum by Tri-State Motors."

Fidelity complains of this instruction because it quotes Section 2–401 of the Uniform Commercial Code (Ill.Rev.Stat. 1967, Ch. 26, § 2–401(2)), equating physical delivery with ownership unless otherwise agreed.

It is true that the Official Comment to the Uniform Commercial Code states that Section 2–401 is not intended "to indicate which line of interpretation should be followed in cases where the applicability of 'public' regulation depends upon a 'sale' or upon location of 'title' without further definition" (26 Smith-Hurd Ill.Ann.Stats. § 2–401, p. 314). However, the Official Comment recognizes that it may at times be appropriate to consider this Section

---

1. The pertinent liability clause of Part I of the policy provided coverage for:
   "*Automobile Hazards*:
   "1. *All Automobiles*:
   "(a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations,
   \* \* \*."

2. Neither party has ever contended that this was a question of fact for the jury.

when, as here, not dealing with buyer-seller relationships. Thus the Official Comment observes (*ibid.*):

> "It is therefore necessary to state what a 'sale' is and when title passes under this Article in case the courts deem any public regulation to incorporate the defined term of the 'private' law."

■ The Illinois Code Comment likewise discloses that Section 2–401 is not conclusive in determining ownership in third party situations (op. cit., p. 313), but Fidelity has not shown that Illinois law relating to passage of title is different when, as here, insurers are involved. We think the District Court properly instructed the jury that it could consider Section 2–401 together with all of the other evidence in the case in determining who owned the 1961 Ford.

This conclusion is reinforced by Motors Insurance Corp. v. Safeco Insurance Co. of America, 412 S.W.2d 584, 585 (Ky. 1967). There the court applied the delivery test of Section 2–401 to determine whether a used car dealer or its customer owned an automobile in order to resolve whose insurer was liable.

Also pertinent is O'Brien v. Isaacs, 32 Ill.2d 105, 107, 203 N.E.2d 890 (1965), where the Illinois Supreme Court relied heavily on Section 2–401 in holding that Illinois florists must pay the Illinois Retailers' Occupation Tax as to flowers delivered locally pursuant to out-of-state telegraphic orders. Since the *O'Brien* case applied Section 2–401 to a public law issue, the jury was certainly entitled to consider it in this private law case.

Although Fidelity relies on Mullen v. Farm Bureau of La Salle County, 21 Ill. App.2d 280, 157 N.E.2d 679 (1959), to show the impropriety of considering the Uniform Commercial Code, the Appellate Court of Illinois applied its predecessor, the Uniform Sales Act, in holding the title to a Pontiac automobile had passed from the dealer to the plaintiff. *Mullen* and Fidelity's other two authorities [3] establish that the time of passing title can depend on the intention of the parties. Both instructions under attack give appropriate weight to intention, understanding or agreement of the parties and are therefore consistent with Fidelity's three authorities.

■ Fidelity also objects to the District Court's refusal to add the following italicized phrase to the first sentence of the second paragraph of Instruction 1A.[4]

> " 'Whether or not a sale of the 1961 Ford by Southside Ford Truck Sales, Inc. to Tri-State Motors occurred on delivery of the 1961 Ford to Tri-State Motors *or when Tri-State ultimately paid for the Ford automobile* [in July 1964] ultimately depends on the intention of Southside Ford Truck Sales, Inc. and Tri-State Motors and the understanding between them.' "

Fidelity complains that without the italicized phrase this sentence places undue

---

3. Granite City Steel Employees Federal Credit Union v. Mercury Mutual Insurance Co., 44 Ill.App.2d 169, 194 N.E.2d 358 (1963), and Shilling v. Campbell, 38 Ill.App.2d 180, 186 N.E.2d 782 (1962).

4. The entire Instruction 1A was as follows:
   "Ownership is the legal right to use and enjoy property and to exercise exclusive dominion and control over a particular piece of property. The owner of an automobile is the person who has the legal right to use it and dispose of it as he pleases. It is the right to such use and control of property that constitutes ownership, not necessarily the exercise of control over an object, for a person may use or control property by permission of the owner. Cer-

tificate of title is an indicator of ownership of an automobile but it is not exclusive and may be rebutted by other evidence. Determination of ownership depends on all of the evidence in the case.
   "Whether or not a sale of the 1961 Ford by Southside Ford Truck Sales, Inc. to Tri-State Motors occurred on delivery [or when Tri-State paid] of the 1961 Ford to Tri-State Motors ultimately depends on the intention of Southside Ford Truck Sales, Inc. and Tri-State Motors and the understanding between them. It is for you the jury to consider and weigh all of the evidence that has a bearing on what that intention was and to determine who owned the automobile at the time it was loaned by Tri-State Motors to James Baum."

emphasis on delivery. Looking at the instruction as a whole (note 4), it is apparent that delivery was not over-emphasized. An earlier part of the instruction called the jury's attention to the certificate of title, which was not transferred until Tri State paid for the car in July 1964. Other indicia of ownership were also covered in Instruction 1A. Moreover, ownership at the time of the May 6 accident was the crucial issue, so that occurrences between Southside Ford Truck Sales and Tri State afterwards did not warrant emphasis.

■ Fidelity's third and last point is that the 1961 Ford was not "used principally in the garage operations" of Tri State because it was merely stock in trade held for sale. The clause in question was designed to deny coverage to an automobile used primarily for personal business (cf. State Farm Mutual Auto Insurance Co. v. Mohan, 85 Ill.App.2d 10, 21, 228 N.E.2d 283 (1967)[5], for garage liability policies ordinarily cover more hazards than most liability policies. Morrison v. Anchor Casualty Co., 53 Wash. 2d 707, 336 P.2d 869, 870–871 (1959).

■■ As already noted, "garage" was defined in the policy to include "an automobile sales agency." Therefore, the key word for construction is "used." With respect to a clause in an insurance policy containing the word "use," this Court has held that the language of the policy is to be construed in accordance with what a reasonable person in the position of the insured would understand its words to mean. Hoffman v. Illinois National Casualty Co., 159 F.2d 564, 566 (7th Cir. 1947). Certainly a dealer could reasonably expect that the comprehensive coverage of this sort of policy would apply to cars on the lot that were occasionally driven for non-business purposes. The word "use" is "one of the most compre-

hensive words in our language" and is to be given its ordinary meaning. United States v. Miller, 379 F.2d 483, 485 (7th Cir. 1967), certiorari denied, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281; see also General Accident Fire & Life Assurance Corp. v. Brown, 35 Ill.App.2d 43, 48, 181 N.E.2d 191 (1962). It is surely broad enough to include cars being held for sale, the most important source of a used car dealer's livelihood.

In Rivas v. Killins, 346 S.W.2d 698 (Mo.App.1961), the court construed a similar clause to apply to a car held as part of a used car dealer's stock for sale, observing (346 S.W.2d at p. 700):

"He [the used car dealer] had no use for it whatever except as an item of merchandise; and, but for the sales he might make, he could not and would not remain or be in the used car sales business. Any automobile held or owned by a dealer and actually being offered for sale, is used principally in his business. The fact that it was, at the time, temporarily loaned to Killins is not controlling of its principal use, no more than that other automobiles in stock were temporarily 'stored' on the lot."

■ Peerless Insurance Co. v. Gould, 103 N.H. 134, 166 A.2d 462 (1960), reaches a contrary conclusion. However, where two equally reasonable interpretations are possible, under Illinois law the provision will be construed against the insurer. Johnson v. Equitable Life Assurance Society of United States, 275 F. 2d 315, 318 (7th Cir. 1960). Therefore applying this Illinois rule of construction against the insurer, we decline to follow the *Peerless Insurance Company* case and hold that this clause in Fidelity's policy applies, so that the subrogee was entitled to recover.

Affirmed.

---

5. *Mohan* does not support Fidelity, for there the car was intended only to be brought to the insured Lowery repair shop for repairs and was not "primarily used" in Lowery's garage business, as required by the liability policy. Its primary use was in the service of the owner, Midway Tobacco Company.