493 F.2d 377
 The HANOVER INSURANCE COMPANY, Plaintiff-Third Party
Plaintiff-Appellee,
v.
Van HAWKINS and Violet Hawkins, d/b/a Custom Camper,
Defendants-Counter-Claimants-Appellants.
Verdon E. STEWART and Iris C. Stewart, Defendants-Appellants,
v.
Richard E. POWELL and Falendar-Ludlow Corporation, Third
Party Defendants-Appellees.
 No. 73-1261.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 22, 1974.
Decided March 18, 1974.
 
 Robert V. Bridwell, Richard L. Fairchild, Indianapolis, Ind., for appellants.
 Lloyd H. Milliken, Jr., Carl G. Winter, Indianapolis, Ind., for appellee.
 Before CASTLE and KILEY, Senior Circuit Judges, and STEVENS, Circuit judge.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Defendants Van and Violet Hawkins, doing business as Custom Camper, and Verdon E. and Iris C. Stewart appeal from an order granting summary judgment to the plaintiff, Hanover Insurance Co., in an action for a declaratory judgment in which Hanover contended that a policy issued to the Hawkinses did not insure them against claims asserted by the Stewarts arising from an explosion in the Stewarts' trailer caused by a gas heater installed by Custom Camper. The Hawkinses also appeal from the granting of summary judgment to Hanover on a counterclaim in which they sought to have their manufacturers and contractors' liability insurance policy issued by Hanover reformed to cover both product liability and completed operations risks.[1] The defendants essentially claim on appeal that the court erred in determining that the explosion occurred after the installation 'operations' were 'completed,' while the Hawkinses contend that the court erroneously found that Hanover's agent, Richard E. Powell, had not engaged in fraudulent or inequitable conduct in insuring the Hawkinses. We have considered these questions, and we affirm.
 
 
 2
 The facts are essentially undisputed. On November 2, 1970, Stewart drove his camping trailer to Custom Camper to purchase a heater for his camper and to arrange for its installation. When he returned to Custom Camper on November 5 to pick up the trailer, Stewart noted that the heater had been installed but was not operating, even though Robert Hawkins (son and employee of the defendants Hawkins stated that his father had lit the heater on the previous evening. On investigation, Robert Hawkins located and repaired a leaking joint in the gas line of the heater. He subsequently relit the heater and advised Stewart to leave the heater operating overnight in order to facilitate relighting on later use. At this time, Stewart also observed that the installation of the heater was inadequate in two respects: First, the heater, which was mounted on a block of wood on the camper floor, 'wiggled around when you would take ahold of it.' Second, the heater had not yet been encased in paneling which was to be secured to the camper wall according to the installation instructions. Only the rear portion of the paneling had been constructed and affixed to the heater. On the assurance that the paneling and bracing would be finished whenever Stewart returned the camper to Hawkins, Stewart paid for the work and drove the camper to his home to prepare for a week-end camping trip. The following morning, Stewart stepped into the trailer and was in the process of lighting a cigarette when the trailer, which had apparently filled with escaped gas from the heater, exploded.
 
 
 3
 At the time of the explosion, the Hawkinses carried manufacturers and contractors' liability insurance issued by Hanover. This policy provided coverage for personal injury and property damage resulting from certain Custom Camper operations, but it specifically excluded coverage for liability resulting from a 'completed operations hazard' or a 'products hazard.' The products hazard included injury or damage which occurred away from the manufacturer's or contractor's premises and after physical possession of the product had been relinquished. The completed operations hazard included injury or damage occurring after completion of operations, which the policy defined as the earliest of the following times: (1) when all operations to be performed had been completed, (2) when all operations to be performed at the site of operations had been completed, or (3) when the portion of the work out of which the injury or damage arose had been put to its intended use by any person. Moreover, the policy specifically noted that operations which required 'further service or maintenance work, or correction, repair or replacement because of any defect or deficiency' but which were 'otherwise complete' were to be deemed completed for purposes of the policy.
 
 
 4
 Hanover concedes that the undisputed facts of this case would properly prevent the court from granting it summary judgment on the basis of the 'completed operations hazard' exclusion if a completed operation were only defined in terms of the first two definitions stated above. The crux of the case, then, is whether the third alternative definition of a completed operation, 'the portion of the work out of which the injury or damage arises has been put to its intended use by any person,' applies to the facts presented here.
 
 
 5
 In urging the inapplicability of the definition, the defendants first contend that the heater had not yet been put to its intended use at the time of the explosion, because it was being operated solely to 'break it in' rather than to heat the trailer for human habitation. We note that in Indiana Insurance Co. v. Fidelity General Insurance Co., 393 F.2d 204, 208 (7 Cir. 1968), this court stated, 'The word 'use' is 'one of the most comprehensive words in our language' and is to be given its ordinary meaning' It is patently undeniable that the heater's pilot light had been lit and left operating in the camper in a manner envisioned by both the contractor and the consumer. Under the Indiana Insurance case, it is clear that both Custom Camper and Stewart intended to operate the heater and thus put it to its intended use when the pilot light was lit. The fact that the heater had been put to its intended use is not negatived simply by the exclusion from the camper of individuals who might have benefited from the heater's warmth. Secondly, the defendants argue that because Stewart's claim was not premised on the use of the heater but rather on its original improper installation, the exclusionary definition does not apply. Under the terms of the exclusion, however, the factual basis of the claim is legally irrelevant to a determination of the extent of the policy's coverage. That is, whatever the cause of the injury, coverage is excluded if the heater had already been put to its intended use. Thirdly, the defendants argue that the heater was not intended to be used unless securely fastened to the interior of the camper. The defect of that reasoning is that it presupposes an extremely restrictive definition of 'intended use.' It cannot be gainsaid that since the instructions required the paneling to be braced to the trailer for proper functioning, the heater should not have been sued with only a portion of the paneling affixed. Nonetheless, both Stewart and Hawkins intended and, in fact, operated the heater in exactly the fashion foreseen by the manufacturer, despite the inadequate bracing. Fourthly, the defendants maintain that Stewart's injury did not arise from a 'portion of the work' but rather from the failure of Custom Camper to do certain work. That is a frivolous distinction, however, as the latter is implied in the former. The gist of the definition is that the work is only sufficiently finished to be put to its intended use. Here, it is clear that whatever the source of the injury, the installation was sufficiently completed such that the heater could be operated by Hawkins and Stewart in the customary manner.
 
 
 6
 The defendants also contend that certain facts specifically found by the lower court pursuant to a local court rule are not undisputedly supported by the rocord. This court's power on review to determine whether there is any genuine issue of fact underlying the adjudication when such issues of fact are plainly disclosed in the trial court is, of course, unaffected by the local rule of the lower court. See, 6 J. Moore, Federal Practice, P56.27 (1) (2d ed. 1948); rule 83, Fed.R.Civ.P. However, this court will not reverse an order granting summary judgment unless such issues of fact are material. Id. Thus, for example, whether the heater was in fact still operating when the camper was parked in front of the Stewart home, whether Stewart's injuries resulted from a negligent installation or from a defective product, and whether the gas lines which Robert Hawkins testified he installed and connected were inadequately tightened or became loose in transit, are either immaterial or irrelevant to a determination that the explosion occurred after the installation operation was completed. We therefore conclude that the lower court correctly determined from the undisputed material facts that under the policy's third alternative definition, Hawkins' operation respecting the installation of the Stewart heater was complete prior to the accident.
 
 
 7
 Regarding the counterclaim for reformation of the insurance contract to include coverage for both completed operations hazards and products hazards, the following facts are uncontested. After purchasing Custom Camper in 1966, the Hawkinses contacted Powell, who had agency agreements with several insurance companies including Hanover, about insurance for the business. Hawkins stated that he 'wanted liability insurance to cover everything' or 'complete coverage,' and Powell assured him that he would take care of it. Hawkins did not request either product liability or completed operations coverages. Powell did not mention either type of coverage to Hawkins, because he believed that none of the companies he represented would underwrite such insurance for a new venture in which the owner had no previous experience. Subsequently, Powell submitted an application to Hanover on the Hawkinses' behalf for manufacturers and contractors' liability insurance and for workman's compensation insurance. When the policies were issued, Powell delivered them to Hawkins and explained them to him briefly. The liability policy was renewed for an additional year on three later occasions. Without specific authorization from Hawkins, Powell requested that Hanover increase the amount of coverage; this change was approved by Hanover, and the Hawkinses paid the higher premium. In 1968, without specific authorization, Powell decided to 'test the waters' by requesting that the liability policy be issued on a comprehensive general liability form to include products liability coverage written in conjunction with complete operations coverage. Hanover advised Powell that, despite the Hawkinses' two years of experience with Custom Camper, it was unable to expend its coverage beyond the premises and operations portion provided in prior years.
 
 
 8
 The Hawkinses contend that the failure of Powell to disclose the distinctions between manufacturers and contractors' liability insurance and products liability and completed operations insurance (in light of Powell's experience in evaluating risks, his awareness of the Hawkinses' need for such coverage, and the Hawkinses' ignorance of their own insurance needs) coupled with their reliance on Powell's promise to take care of them amounted to either fraudulent or inequitable conduct. The Hawkinses further argue that such conduct by Powell concurrent with their mistake of fact as to the scope of their 'liability insurance' is sufficient grounds to warrant the reformation of the insurance contract. See, Holly Stores, Inc., v. Judie, 179 F.2d 730 (7th Cir. 1950); Hammond Hotel & Improvement Co. v. Perrin, 96 Ind.App. 311, 184 N.E. 906 (1933) (standard for reformation of written instrument); McKay Corp. v. Home Insurance Co., 130 F.Supp. 633 (N.D.Ind.1955) (application of general rules of reformation to insurance contract). It is well-established in the case law, however, that a general request for full coverage is insufficient to support an action for reformation of an insurance contract. In Vobill Homes v. Hartford Accident & Indemnity Co., 179 So.2d 496 (La.App.1965), a manufacturers and contractors' liability policy which excluded coverage for product liability and completed operations hazards was issued. In opposing a motion for summary judgment, the insured contended that genuine issue of fact existed as to the intention of the parties to the insurance contract, since the insured had requested 'complete liability coverage.' The Supreme Court of Louisiana affirmed the summary judgment, stating, 'Nor are we cited to any authority in support of the proposition that a policy should be reformed because of some general impression that coverage would include some particular type of risk not specifically discussed with the agent before the policy was issued or the loss occurred.' Id. at 498. See also, Ahnapee & Western Railway Co. v. Challoner, 34 Wis.2d 134, 148 N.W.2d 646, (1967). The Hawkinses attempt to distinguish Vobill by arguing that Hanover, unlike the insurance company in that case, had issued policies insuring against the specific type of loss involved in the case. That distinction is without merit, however, since as a practical matter, Hanover did not issue product liability and completed operations hazards insurance to novice manufacturers such as the Hawkinses. That was proven by Hanover's denial of Powell's request for such coverages even after the Hawkinses had been in the business for two years. Clearly, the agents in both cases obtained all the liability insurance which their companies issued under the circumstances.
 
 
 9
 In Volf v. Ocean Accident and Guarantee Corp., Ltd., 50 Cal.2d 373, 325 P.2d 987 (1958), the California Supreme Court denied reformation of an insurance contract to include completed operations coverage where the plaintiff had merely requested 'full coverage as far as materials and workmanship' (is) concerned,' because, as Justice Traynor succinctly noted for the court, 'There was no discussion of particular risks.' Id. at 989. Similarly, in E. K. Hardison Seed Co. v. Continental Casualty Co., 56 Tenn.App. 644, 410 S.W.2d 729 (1967), the court denied reformation where the insured had requested 'full coverage for the business operation' but had not specifically discussed breach of warranty hazard coverage with the agent. Both of these cases strikingly parallel the pertinent facts of the case at bar, in which the Hawkinses request was simply limited to full liability coverage without any discussion of risks arising from either product liability or completed operations hazards.
 
 
 10
 The Hawkinses contend, however, that the present case is controlled by Vernon Fire and Casualty Insurance Co. v. Thatcher, Ind.App., 285 N.E.2d 660 (1972), an action to recover damages for false representation by the insurer's agent as to the scope of coverage of the fire insurance policy. But a close examination of the facts reveals crucial distinctions between that case and our case. In Vernon, the insured, Thatcher, operated two geographically separate enterprises, a farm and a saddle barn. Thatcher held a farmowners' policy on the farm which insured, inter alia, 'unscheduled personal property' wherever located, provided that property pertaining to a business was excluded from coverage of property off the premises. Thatcher stored both unrelated personal property and personal property used in his business at the saddle barn; all of the property was destroyed in a fire, and the suit involved the insurance company's liability for the personal property used in the saddle barn business. There was evidence that the insurance agent in soliciting the farmowners' policy expressly represented on numerous occasions that all of the personal property in the saddle barn would be covered in the policy. Also, both the agent and the company's field representative made the same express representation to Thatcher about a year later. Finally, at the time of the fire, the agent again represented that Thatcher's personal property was insured by the policy. Moreover, the insurance company had in fact paid a prior, smaller claim for the loss of personal property used in the saddle barn business.
 
 
 11
 In contrast, in the present case, Powell made no representation concerning the scope of coverage provided in the policy to the Hawkinses and, in fact, secured as much liability insurance for them as the circumstances indicated that he could obtain. Such conduct is neither fraudulent nor inequitable, and the lower court correctly so found. Moreover, even if Powell's conduct were unlawful, nothing in the record indicates that Hanover had either actual or implied knowledge of any misrepresentation which must be shown before an insurance company may be held liable for a soliciting agent's false representation of policy coverage. Cadez v. General Casualty Co. of America, 298 F.2d 535 (10th Cir. 1961). Vernon Fire & Casualty Insurance Co. v. Thatcher, supra, 285 N.E.2d at 671. Unlike Vernon, Hanover did not pay a prior claim on an identical kind of loss, and no special representative of the company ever reiterated any misrepresentations concerning the scope of the policy. Thus, there is nothing in the record from which knowledge of any misrepresentation by an agent could be imputed to the company. Cf., Cadez v. General Casualty Co. of America, supra. Since there was neither evidence of fraudulent or inequitable conduct by the agent nor knowledge of such conduct by the insurance company, the lower court properly granted summary judgment to Hanover on the Hawkinses' counterclaim for reformation of the insurance contract.
 
 
 12
 Affirmed.
 
 
 
 [1]
 Following the explosion in which Stewart was injured, he and his wife made claims for their damages against Van Hawkins and Violet Hawkins on the theory that Custom Camper's services had been negligently and incompetently performed. The Hawkinses referred the claims to the Hanover Insurance Co. for defense and further handling, contending that the occurrence was covered under the terms and conditions of the manufacturers and contractors' liability policy which Hanover had issued to them. Hanover then instituted the present action for a declaratory judgment against both the Hawkinses and the Stewarts seeking a declaration that the occurrence was not covered by the policy, and the Hawkinses filed the counterclaim at issue seeking reformation of the policy to include completed operations and product liability coverage