Doris Ann Goetze, Plaintiff-Appellee, *v.* Franklin Life Insurance Co., Defendant-Appellant.

(No. 72-374;

Second District—March 6, 1975.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Peter M. Sfikas, of counsel), for appellant.

McKenna, Storer, Rowe, White & Haskell, of Wheaton (Jay H. Tressler, of counsel), for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The plaintiff brought this action to recover the proceeds of her husband's life insurance policy plus attorney's fees. The matter came before the trial court upon cross-motions for summary judgment. Summary judgment was entered in plaintiff's favor regarding the proceeds of the life insurance policy, but she was denied recovery of attorney's fees. The parties filed cross-appeals from the order of the trial court.

The issues presented for review are (1) whether summary judgment was properly invoked; (2) whether, under the facts, the conditional premium receipt provided for temporary insurance of the proposed insured as a matter of law; and (3) wheher defendant's refusal to tender plaintiff the proceeds of the life insurance policy was vexatious and without reasonable cause.

The facts are that the defendant's sales agent solicited an application for life insurance from Lorenz F. Goetze (applicant). On November 28, 1970, the agent, while in the home of the applicant's mother, had a phone conversation with the applicant and secured the necessary information to complete the application and a related aviation questionnaire. The agent also secured the express authorization of the applicant to sign the papers for him. The answers to the questions within both the application and related aviation questionnaire reveal that the policy applied for was the Executive Protector Plan; that the amount of insurance sought was $50,000; that the applicant was employed as a commercial pilot for Great Lakes Airlines; that he would not accept a policy with an aviation exclusion clause; and that, if required, he would pay the extra premium for full aviation coverage.

During this telephone conversation, the applicant inquired as to the

cost of aviation coverage. The agent, not having been issued a copy of the defendant's rate book covering airline pilots, was unable to give the applicant the exact monthly rate, but did tell him that the rate would be somewhere between $4 and $5 per thousand. In order that there would be no misunderstanding, the agent, three times, explained the requirement of an additional premium for aviation coverage. The applicant stated, "that would be alright," and again stated that he "needed the coverage." As revealed in the agent's letter to defendant concerning the telephone conversation with the applicant, there was no doubt in the agent's mind that the extra premium would be paid by the applicant but, not knowing the proper amount, the agent referred to his rate book and requested the sum of $13, that being the regular rate charged without aviation coverage. Thereupon, the applicant's mother gave the agent a check in the amount of $13 and, in exchange, the agent detached and tendered to her a "Conditional Premium Receipt." The check was subsequently cashed by defendant.

On December 3, 1970, the applicant underwent a physical examination by one of defendant's examining physicians. A mercantile investigation of the applicant was also conducted at this time on behalf of the defendant. According to the defendant's senior chief underwriter, who subsequently reviewed the reports, the applicant was in all respects an acceptable risk for a policy with full aviation coverage at a premium rate of $31.50 per month.

On December 10, 1970, the applicant died in a plane crash. A claim was made with the defendant for the proceeds of the insurance policy. On December 18, 1970, the defendant rejected the claim in a letter to the plaintiff, stating in relevant part:

> "We are sorry to have to tell you that the life insurance applied for did not become effective on Mr. Goetze's life. The reason is that his job as a pilot for Great Lakes Airlines would have required us to charge an extra premium of $4.30 per thousand and the policy that we would have issued, if he had lived, would have been offered to him on this basis and would have become effective at the time he accepted the policy and paid the additional premium. Of course, he would have had the right to reject our counter offer of a policy with an extra premium which means there was no meeting of the minds and no contract of insurance in effect when your husband died.
>
> The terms of the agreement are set forth in the Conditional Premium Receipt, which is attached to the application and given to the applicant at the time he fills out the application, providing he submits a premium with the application. We received a pre-

mium of $13.00, which was the correct premium for the plan of insurance applied for, at a standard rate of premium. The policy that we would have issued, if he had lived, would have required a monthly premium of $31.50 rather than $13.00. Since the insurance did not become effective, our check for $13.00 refunding the conditional premium is enclosed."

Thereafter, the plaintiff filed the instant cause of action claiming that, as beneficiary of her husband's life insurance policy with the defendant, she was entitled to the proceeds under the terms of the "Conditional Premium Receipt." [1]

The trial court found that there was no genuine issue of material fact in dispute, that the words of the receipt were ambiguous as applied in this particular case and that in construing the ambiguity against the insurer, the plaintiff was entitled to summary judgment as a matter of law.

---

[1] [Front]
   "This receipt shall operate as a BINDING RECEIPT only upon fulfillment of the conditions stated in paragraph 'FIRST' on the reverse side hereof, which conditions are conditions precedent to the effectiveness of this binding receipt.
   RECEIVED FROM..... $...... in cash and/or $... by note (which is tendered subject to the conditions on the reverse side hereof) on account of the first...premium on proposed insurance on the life of ...... for which an application is this day made to THE FRANKLIN LIFE INSURANCE COMPANY, Springfield, Illinois.
   DATED......, 19...      SIGNED.........AGENT
   THIS RECEIPT MUST NOT BE DETACHED UNLESS SETTLEMENT TOWARD FIRST PREMIUM IS COLLECTED AT THE TIME OF APPLICATION.
   This receipt shall be void if altered or modified or if any check or draft tendered on account of first premium is not paid when presented for payment."
[REVERSE—Inasmuch as only the provisions of Paragraph FIRST are conditions precedent to the effectiveness of the receipt, we set forth only that paragraph.]
   "It is understood and agreed that the tender referred to on the reverse side is made and accepted subject to the following conditions.
   FIRST, That (1) if the amount tendered equals or exceeds the monthly premium for the policy applied for (based on the Company's published rates) and (2) if the Company at its Home Office shall be satisfied after investigation and medical examination (if required) that on the date hereof or on the date of such medical examination, whichever is later, the Proposed Insured was insurable and entitled under the Company's rules and standards to insurance on the plan and for the amount  *  *  *  and at the rate of premium applied for, then the insurance protection applied for shall take effect from said later date  *  *  *  provided the balance of the first premium shall be paid upon delivery of the policy. If the balance of such premium be not so paid, such insurance protection shall nevertheless become effective on said later date and shall be deemed temporary only and to expire at the end of the period for which the amount tendered hereunder would provide such insurance on a pro rata basis."

❶ 1   A summary judgment shall be entered if the pleadings, depositions, admissions and affidavits, if any, disclose no genuine issue of material fact. (Ill. Rev. Stat. 1971, ch. 110, § 57(3).) The uncontradicted facts are that the applicant applied for a life insurance policy which included full aviation coverage; that he tendered the amount requested ($13) which did not equal or exceed the amount of the monthly premium of the policy applied for; that he was insurable both in terms of his health and past history; and that he was entitled to protection under the defendant's rules and standards to insurance under the Executive Protector Plan with aviation coverage for the amount of $50,000 had the $31.50 premium been tendered. These facts are not in dispute. This conclusion is supported in the fact that defendant filed a cross-motion for summary judgment claiming there were no material questions of fact in issue. On this basis, we hold that the trial court properly invoked its summary judgment powers.

The question arises as to whether the trial judge correctly applied the facts to the terms of the contract in accordance with the law, *i.e.*, whether the conditional premium receipt provided temporary insurance for the proposed insured as a matter of law.

The defendant's position is that it intended by the terms of the conditional premium receipt to be bound to a contract of temporary life insurance only if, (1) the amount tendered equaled or exceeded the monthly premium of the policy applied for, and (2) the applicant was insurable and entitled to insurance on the plan, for the amount, and at the rate of premium applied for. Defendant claims that the applicant's failure to meet either of the above conditions negates the existence of the contract as a matter of law.

■■   In construing an insurance contract, our primary purpose is to give effect to the intentions of the parties as expressed in the contract. (*Dawe's Laboratories v. Commercial Insurance Co.*, 19 Ill.App.3d 1039, 1048 (1974).) In the absence of an ambiguity the words of the insurance policy are to be given their plain, ordinary and popular meaning. (*Weiss v. Bituminous Casualty Corp.*, 59 Ill.2d 165, 170-71 (1974).) Ambiguous provisions or equivocal statements, whereby the insurer seeks to limit its liability, are construed most strongly against the insurer and liberally in favor of the insured. (*Mosby v. Mutual Life Insurance Co.*, 405 Ill. 599, 607 (1950).) It should be noted that the insurer has the capacity to draft intelligible contracts. 12 Appleman, Insurance Law & Practice, ch. 263, § 7222, at 203 (Supp. 1974).

■■   In deciding whether an ambiguity exists, the court must not consider the policy in a vacuum, but instead is required to consider the particular factual setting in which the policy was issued. (*Glidden v.*

*Farmers Automobile Insurance Association*, 57 Ill.2d 330, 336 (1974).) Among the factors giving rise to a finding of an ambiguity is the failure on the part of the insurer to phrase the receipt in terms sufficiently clear for a layman to understand. O'Neill, *Interim Coverage: Conditional Receipts*, 1964 U. Ill. L.F. 571, 576-77.

The receipt herein, by its terms, becomes binding upon fulfillment of the conditions in paragraph FIRST, conditions which are, generally, payment of a premium and insurability. Defendant claims neither was met.

Regarding the premium payment requirement of paragraph FIRST, defendant initially expresses an intent to be bound only if the amount tendered equals or exceeds the monthly premium of the policy. Thereafter, however, in the same paragraph, the defendant qualifies this statement by providing that the balance of the first premium can be tendered upon delivery and that, even if the balance is not so paid, temporary insurance shall, nevertheless, become effective on a pro rata basis from the date of the medical examination. The conflicting provisions of both full and partial payment cannot both simultaneously operate. Additionally, the language on the face of the receipt states that the applicant is paying "on account of the first premium," and that the applicant can be given the receipt when he makes payment "toward the first premium." Defendant's construction of the premium requirement of the receipt ignores both the conflicting provisions in paragraph FIRST and the words on the face of the receipt.

On the basis of the conflicting provisions, the defendant can arbitrarily assert or deny temporary coverage of an insurable applicant who makes an insufficient premium payment. Should the applicant die prior to issuance of the policy, the defendant, under clause (1) of paragraph FIRST, can claim that no temporary coverage came into existence. Should the applicant live and seek a return of his insufficient premium payment, the defendant, under clause (2) of paragraph FIRST, can retain the insufficient tender claiming that temporary coverage has been provided on a pro rata basis. This ambiguity requires us to construe the provision most strongly against the insurer and most liberally in favor of the insured. Under such construction, we find that payment of less than the full monthly premium does not, by itself, negate the existence of a binding contract for temporary insurance as a matter of law. We hold that the payment of the correct amount at the time the receipt was issued was excused by the words of clause (2), paragraph FIRST, which allows for payment of the balance of the first premium on delivery of the policy. We also conclude on this issue that on a prorated basis, the $13 tendered provided coverage for the applicant on the date of his death.

The application and aviation questionnaire on their face, along with the facts of the case, all belie defendant's claim that the applicant was not insurable or entitled to insurance on the plan, for the amount and at the rate of premium applied for. There is no question that the applicant intended to purchase life insurance in the amount of $50,000 under the Executive Protector Plan with full aviation coverage; that he knew an additional amount of monthly premium would be required; that he would have paid the full premium amount when the receipt was issued but due to the inability of defendant's agent to quote him the substandard rate ($31.50), the applicant tendered only the requested amount ($13, standard rate); and that he intended to pay the additional premium when required to do so.

The facts also confirm that defendant intended to so insure the applicant. This conclusion is supported by defendant's receipt of the application which showed applicant to be a commercial pilot; by receipt of the aviation questionnaire which clearly indicated applicant's declination of any policy without aviation coverage; by the agent's reaffirmation of the fact that the applicant would only accept the Executive Plan policy if it included aviation coverage; by the statement of defendant's senior chief underwriter who, after reviewing applicant's medical and mercantile reports, concluded that the applicant was an acceptable risk for full aviation coverage.

Defendant's own letter of declination indicates that had the full premium been paid the policy it "would have issued" was the Executive Plan with aviation coverage. Contrary to the letter of declination, which refers to such coverage as "a counter offer," we find that there had in fact been a meeting of the minds at the time the receipt was delivered.

On the basis of this undisputed evidence, we conclude that as a matter of law the applicant satisfied the condition of being insurable and entitled under the defendant's rules and standards to insurance on the plan (Executive Protector with aviation coverage), for the amount ($50,000), and at the rate of premium applied for (substandard).

■■ For the reasons stated we therefore hold that the applicant here complied with both conditions, payment of premium and insurability, and that under the facts the conditional premium receipt provided temporary insurance as a matter of law. See *Slobojan v. Western Travelers Life Insurance Co.*, 70 Cal.2d 432, 450 P.2d 271, 74 Cal. Rptr. 895 (1969); *Law v. Hawaiian Life Insurance Co.*, 51 Hawaii 288, 459 P.2d 195 (1969); *Service v. Pyramid Life Insurance Co.*, 201 Kan. 196, 440 P.2d 944 (1968); Annot., 2 A.L.R.2d 943 (1948).

■■ Plaintiff claims that the trial court erred in not awarding her at-

torney's fees under section 155 of the Insurance Code (Ill. Rev. Stat. 1971, ch. 73, § 767). Considering the facts of this case, the status of the law on conditional receipts, and the lack of any former case construing the verbiage contained in this particular receipt, we cannot say that the defendant's refusal to pay was "vexatious and without reasonable cause." See *Crest v. State Farm Mutual Automobile Insurance Co.*, 20 Ill.App.3d 382, 387-88 (1974).

Judgment affirmed.

GUILD and RECHENMACHER, JJ., concur.