In re EARL LITTLE & SONS, INC. and James R. Little, Debtors.

**Bankruptcy Nos. 76 B 7149, 76 B 7148.**

United States Bankruptcy Court, N. D. Illinois, E. D.

March 31, 1982.

John Ruddy, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for debtor.

Paul Festenstein, Condon, Cook & Roche, Ltd., Chicago, Ill., for Commerce.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on defendant's, Commerce and Industry Insurance Company's (Commerce), motion for summary judgment. The parties have argued the motion and supplied this court with briefs and memoranda. This court having carefully considered counsel's arguments, the briefs and memoranda filed and the fruits of its own research, does hereby make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Earl Little & Sons, Inc. and James R. Little (Little—Both Earl Little & Sons, Inc. and James R. Little will be referred to as "Little" because they are indistinguishable for the purpose of this motion) are the plaintiff-debtors in the business of real estate construction and development. In 1971, the debtors purchased an insurance policy, no. SMP 600–79–13 from Commerce. The policy was purchased to protect Little from potential claims arising from the construction and maintenance of the Hil'Crest Apartments.

The Hil'Crest Apartments were completed sometime during 1972. Some three years later, on September 1, 1976, James A. Yesaitis filed a lawsuit against Little in Circuit Court alleging that the Yesaitis had suffered property damage to their residence as a result of the negligent construction of the Hil'Crest Apartment buildings and adjacent parking lots.

Sometime after the filing of the above suit, the debtors sought relief in Bankruptcy Court by filing a Chapter XI petition under the Bankruptcy Act of 1898. The Yesaitis then filed a Complaint for Declaratory Relief in this court. Little tendered the defense of the Yesaitis claim to Commerce under the policy. Commerce refused to defend and filed the instant motion for summary judgment.

The policy covers some types of hazards and excludes others. One of the exclusions is for hazards occurring after the project is completed. The exclusion language is as follows:

It is agreed that the insurance does not apply to ... property damage included within the Completed Operations Hazard ...

The excluded term, "Completed Operations Hazard," is defined under the subject policy as follows:

"Completed Operations Hazard" includes ... property damage ... after such operations have been completed .... "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

1. * * *

2. * * *

3. when the portion of the work out of which the injury or damage arises has been put to its intended use by any person....

Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency or which are otherwise complete shall be deemed completed....

Commerce also rejected Little's tender of defense based on a Loss from Water Damage exclusion. It is not necessary to examine this exclusion based on the court's finding that the damage was included within the Completed Operations Hazard Exclusion and therefore uninsured by the policy.

In his affidavit in support of his response, Little states he obtained the policy to protect his company from claims arising from negligent construction of the apartment complex. He does not recall discussing the completed operations exclusion with Commerce and would not have agreed to the clause if he had known the meaning of the completed operations exclusion. Little indicates that before he obtained the policy, he explained to Commerce the "type of coverage he desired" and was assured by the agent that the policy would cover his company and himself from claims based on negligent construction. Little does not make

reference to specific statements made by the agent which would suggest the coverage extended beyond completion of the project.

The evidence fails to show whether Little was or was not continuing to pay policy premiums in 1976 when the Yesaitis' claim arose.

## DISCUSSION

The function of summary judgment is to avoid useless trial. Trial is unnecessary and summary judgment is proper where there is no genuine issue of material fact. 6 Moore's Federal Practice ¶ 56.15. FRCP 56(c). The instant case is an appropriate case for summary adjudication because there is no genuine issue as to any material fact.

Commerce refused to accept the Little's tender of defense and moves for summary judgment because it maintains that the policy's exclusion endorsement, entitled "Completed Operation and Products Hazards", specifically excludes this type of claim.

Little and the Yesaitis contend that the damage sustained to the Yesaitis property arose because of negligent construction of the complex. They contend that it would be against public policy if insurance companies could exculpate themselves from covering such claims by arguing that the completed operation exclusion disallowed claims for negligent construction the day after the construction is completed.

Little argues that where there is an ambiguity in an insurance policy, as in any contract, the court must consider the intent of the insured by examining the "subject matter of the contract, the facts and circumstances attending its execution, the situation of the parties, and the predominant purpose of the contract." *Great Central Insurance Co. v. Bennett*, 40 Ill.App.3d 165, 171, 351 N.E.2d 582, 587 (2d Dist. 1976); *Brady v. Highway Comm'r.*, 24 Ill.App.3d 972, 975–76, 322 N.E.2d 236 (3rd Dist. 1975). To determine whether an ambiguity exists, the court should consider, among other factors, whether the words of the terms are sufficiently clear for a layman to under-

stand. *Goetze v. Franklin Life Insurance Co.*, 26 Ill.App.3d 104, 108, 324 N.E.2d 437, 441 (2d Dist. 1975).

In the instant case there is no such ambiguity and the words of the contract are to be given their plain, ordinary and popular meaning. *Goetze, supra* at 108, 324 N.E.2d 437. *Weiss v. Bituminous Casualty Corp.*, 59 Ill.2d 165, 170–71, 319 N.E.2d 491 (1974). In the Exclusion Endorsement, the contract clearly states that the policy "does not apply to ... property damage included within the Completed Operations Hazard." The definitions attached to the policy explain that "Completed Operations Hazard", comprises property damage claims arising after completion of the operation. Completion is defined as occurring when the work is put to its intended use by someone other than the contractor or subcontractor. Completion also includes work which may require further service, maintenance work, correction, repair or replacement because of a defect, but which is otherwise complete.

Recently, the 7th Circuit interpreted a similar insurance contract containing a Completed Operations Hazard Exclusion. *Hanover Insurance Co. v. Hawkins*, 493 F.2d 377 (7th Cir. 1974). The defendants, a custom camper company, installed a gas heater in a camper owned by Stewart. Although the installation was not completed, Stewart paid for the heater, with the promise that defendants would complete the installation whenever Stewart returned. The heater exploded the following morning and Stewart sued. When purchasing their insurance policy, the defendant company told the agent it "wanted liability insurance to cover everything." *Id.* at 381. The agent assured them that he would take care of it. The court held that without a showing of either actual or implied knowledge of any misrepresentation by the agent, the insurance company could not be held liable for misrepresentation on such a general request. *Id.* at 382. The 7th Circuit did not find any misrepresentations made by the agent and turned to the actual words of the policy. The 7th Circuit held that the words

of the Completed Operations Hazard Exclusion meant the Camper Company was not covered by the policy, "whatever the cause of injury, ... if the heater had already been put to its intended use." *Id.* at 380.

Similarly, in the case at bar, the apartment complex was completed in 1972 and had been put to its intended use. At the time of completion, the exclusion for Completed Operations Hazard came into effect. The Yesaitis complaint was filed in 1976, over three years after completion. Thus, Commerce had no duty to defend Little in the Yesaitis suit since the Yesaitis's claims were explicitly excluded from coverage under the policy.

### CONCLUSION

The language of the policy is clear and excludes coverage after the Hil'Crest Apartments were completed and put to their intended use. Commerce no longer had a duty to defend Little after completion. Because there is no ambiguity in the language of the policy, Little's intent is not relevant to the motion for Summary Judgment.

WHEREFORE, IT IS HEREBY ORDERED that the motion for Summary Judgment by Commerce & Industry Company be and hereby is granted.